JESSE W. JACKSON v. W. N. PARKS.

(Filed 7 January, 1942.)

**1. Appeal and Error § 39—**

A new trial will be awarded on exception to the admission or exclusion of evidence only in the event appellant makes it appear that error which is prejudicial was committed by the trial court.

**2. Evidence § 41—**

Hearsay evidence may be defined as evidence without the safeguards of having the declarant under oath and subject to cross-examination, and written as well as parol evidence may be objectionable as hearsay.

**3. Same: Process § 16—**

In an action for abuse of process, based upon defendant's acts in having the plaintiff wrongfully confined in an insane asylum, a letter written to plaintiff by one in authority in plaintiff's church, stating in substance that plaintiff's confinement was unjust and had destroyed plaintiff's usefulness and possibility of obtaining employment in further ministerial work in the church, is hearsay and highly prejudicial, and entitles defendant to a new trial.

**4. Appeal and Error § 47b—**

Where there has been no prejudicial error committed in the trial of one of plaintiff's causes of action, but as to the other cause of action prejudicial error is made to appear in the admission of evidence, the Supreme Court, in its discretion, may grant a partial new trial.

APPEAL by defendant from *Williams, J.*, and a jury, at January-February Term, 1941, of WAYNE. No error, in part. New trial, in part.

This case was here on appeal by plaintiff from a judgment of nonsuit. The judgment was reversed. The material facts are set forth in that opinion. It was also decided in the opinion that the plea of the statute of limitations was not available to defendant on plaintiff's causes of action. 216 N. C., 329. The issues indicate the controversy. The issues submitted to the jury, and their answers thereto, were as follows:

"1. Did the defendant cause the plaintiff to be prosecuted for larceny in the court of H. H. Brown, Justice of the Peace, on October 16, 1935, as alleged in the complaint? Ans.: 'Yes.'

"2. If so, was said prosecution without probable cause? Ans.: 'Yes.'

"3. If so, was said prosecution malicious? Ans.: 'Yes.'

"4. What compensatory damage, if any, is plaintiff entitled to recover therefor? Ans.: '$1,000.00.'

"5. What punitive damage, if any, is plaintiff entitled to recover? Ans.: '$1,000.00.'

"6. Did the defendant unlawfully and maliciously procure plaintiff's confinement in the State Hospital for the Insane at Goldsboro on January 9, 1936, as alleged in the complaint? Ans.: 'Yes.'

"7. If so, what amount of compensatory damage, if any, is plaintiff entitled to recover? Ans.: '$1,000.00.'

"8. What punitive damages, if any, is plaintiff entitled to recover? Ans.: '$1,000.00.'

"9. Did the defendant unlawfully and maliciously procure said plaintiff's confinement in the State Hospital for the Insane at Goldsboro on January 9, 1937, as alleged in the complaint? Ans.: 'Yes.'

"10. If so, what amount of compensatory damage, if any, is plaintiff entitled to recover? Ans.: '$5,000.00.'

"11. What punitive damage, if any, is plaintiff entitled to recover? Ans.: '$5,000.00.'

"12. Is plaintiff's alleged cause of action for malicious prosecution barred by the statute of limitation? Ans.: 'No.'

"13. Is plaintiff's alleged cause of action for alleged malicious confinement in the Hospital for the Insane on January 9, 1936, barred by the one year statute of limitation? Ans.: 'No.'

"14. Is plaintiff's alleged cause of action for the alleged malicious confinement in the State Hospital for the Insane on January 9th, 1937, barred by the one year statute of limitation? Ans.: 'No.'"

The court below rendered judgment on the verdict. There were numerous exceptions and assignments of error made by defendant. Only those necessary for the decision of the action and the necessary facts will be set forth in the opinion.

*George B. Greene, Matt H. Allen, Scott B. Berkeley, and Kenneth C. Royall for plaintiff.*

*Fred B. Parker, Jr., Paul B. Edmundson, J. Faison Thomson, J. A. Jones, and John G. Dawson for defendant.*

CLARKSON, J.   It appears from the record, on the issues submitted on the different causes of action, that wide latitude was allowed by the court below to the plaintiff in his testimony and that of his witnesses. Defendant, in apt time, objected, moved in certain cases to strike out answers, and duly made exceptions and assignments of error to the admissions and exclusions of certain evidence. The allegations of plaintiff were denied by defendant. The defendant's evidence contradicted the material evidence of plaintiff. On the question of compensatory and punitive damages, on the charge of larceny found by the jury to be without probable cause and malicious, we are of the opinion, taking the record as a whole—the evidence pro and con—that the exceptions and assignments of error made by defendant cannot be held for prejudicial or reversible error. Some of the questions and answers appear to be harmless, others are close to the danger line. In the judgment of the court below on this aspect, we think there is no error. On all the other issues, we think there was error and that there should be a new trial.

One of the many exceptions and assignments of error made by the defendant was to the introduction of a letter by plaintiff, which is as follows:

JACKSON *v.* PARKS.

"THE CAROLINA CONFERENCE OF SEVENTH DAY ADVENTISTS,
CHARLOTTE, N. C.

September 30, 1936.

"Mr. J. W. Jackson,
Rt. 2, Box 1154,
LaGrange, North Carolina.

"Dear Brother Jackson: I was very sorry to learn last fall about how unjustly you were confined to the asylum for a time. Your being sent to the asylum was, and is a direct blow against your influence as an elder in our colored church at LaGrange. There is no question but that the opportunity of your ever securing further ministerial work in our conference has suffered a definite set-back by your being sent to the asylum; in fact your being sent to the asylum has cut you out of any chance of securing employment as a minister in the Carolina Conference because when your name goes before the committee, the committee simply could not see light in employing a man who was once in the asylum. Your influence as an elder and as a minister has been destroyed to a large extent by this unjust treatment that you suffered. This thing will always be against your work as an elder, and it has deprived you of the possibility of obtaining employment as a worker in this conference.

Yours sincerely,

J. L. SHULER, President."

The defendant, in his exception and assignment of error, says: "The admission of a letter, plaintiff's Exhibit 6, purporting to have been addressed to the plaintiff by J. L. Shuler. This letter is the grossest hearsay with a consequent conclusion based upon hearsay and offered as an expression of condolence to the plaintiff. It was harmful to the defendant in the minds of the jury, and it seems impossible to escape the thought that it was highly prejudicial to the defendant's case."

We are of the opinion that this evidence was highly prejudicial to defendant on the issues as to plaintiff's confinement in the State Hospital for the Insane, and was calculated to create such feeling by the jury that it induced them to render the verdict on these issues. As to the issues relative to plaintiff's confinement in the asylum, the letter features the unjust confinement in the asylum. The letter speaks for itself. It was hearsay. It sets forth facts unsworn to: "How *unjustly* you were confined in the asylum for a time." The harmful effect: "A *direct blow* against your influence." "No question but that the *opportunity* of your ever securing further *ministerial work* in our Conference has suffered a definite set-back." "In fact your being sent to the asylum has *cut you out* of any chance of *securing employment* as a minister." "Your influence as an *elder* and as a minister has been destroyed to a large extent

by this *unjust* treatment that you suffered. This thing will always be *against your work as an elder,* and it has *deprived* you of the *possibility of obtaining employment* as a worker in this Conference." This letter was signed by one in authority in plaintiff's church and in substance says plaintiff's being sent to the asylum has destroyed his usefulness and the possibility of his obtaining employment. This letter was not under oath and the signer was not subject to cross-examination; was not even put on the stand as a witness when the letter was offered. As it was highly prejudicial to defendant and lacking the customary safeguards thrown around admissible evidence, its admission was error.

In 20 American Jurisprudence, Vol. 20, pp. 400-401, "Hearsay Evidence," we find: "Sec. 451. Hearsay has been defined as evidence which derives its value, not solely from the credit to be given to the witness upon the stand, but in part from the veracity and competency of some other person. Such a definition is sufficient for the most part to represent the meaning and implications of the term. It is important, however, to observe that hearsay is not limited to oral testimony. A writing may be hearsay, and its admissibility as evidence may be dependent upon exceptions to the hearsay rule." Sec. 452: "Hearsay evidence is inadmissible according to the general rule. Various reasons have been assigned for requiring the exclusion of this kind of testimony. The real basis for the exclusion, however, appears to lie in the fact that hearsay testimony is not subject to the tests which can ordinarily be applied for the ascertainment of the truth of testimony. It is said that a statement by hearsay is one made without the sanction of an oath and without the declarant being under a responsibility to answer for the crime of perjury in making a willful falsification."

Shuler's conclusions, even if he had been a witness, were based on hearsay. From time immemorial this type of evidence has been held incompetent.

In *S. v. Kluttz,* 206 N. C., 726 (728), citing numerous authorities, this Court said: "Evidence is termed hearsay when its probative force depends in whole or in part upon the competency and credibility of some person other than the witness from whom the information is sought; and such evidence, with certain recognized exceptions not presently applicable, is uniformly held to be incompetent, the declarant not having spoken under the sanction of an oath and not having submitted to cross-examination."

It is well settled in this jurisdiction that a partial new trial on issues has been granted by this Court.

In *Lumber Co. v. Branch,* 158 N. C., 251 (253), speaking to the subject, it is said: "It is settled beyond controversy that it is entirely discretionary with the Court, Superior or Supreme, whether it will grant

a partial new trial. It will generally do so when the error, or reason for the new trial, is confined to one issue, which is entirely separable from the others and it is perfectly clear that there is no danger of complication. *Benton v. Collins,* 125 N. C., 83; *Rowe v. Lumber Co.,* 133 N. C., 433." *Whedbee v. Ruffin,* 191 N. C., 257 (259); *Will of Bergeron,* 196 N. C., 649 (652); *Lumber Co. v. Power Co.,* 206 N. C., 515 (522).

For the reasons given, on the 1st, 2nd, 3rd, 4th, 5th, and 12th issues we find no error. A new trial is granted on the other issues.

No error, in part.

New trial, in part.