MAUDE T. LEE v. JAMES R. STEVENS AND WIFE, EVELYN K. STEVENS.

(Filed 16 December, 1959.)

**1. Automobiles § 41g—**

Evidence tending to show that defendant ran through a stop sign and entered an intersection in the path of plaintiff's car, which was traveling on the dominant highway, forcing plaintiff to take evasive action to avoid a collision and resulting in plaintiff's being forced off the traveled portion of the highway and down an embankment, is sufficient to take the issue of defendant's negligence to the jury.

**2. Negligence § 24a—**

Evidence sufficient to make out a case of actionable negligence resulting in damage in any amount precludes nonsuit.

**3. Damages §§ 3, 14—**

Proof of negligence and subsequent injury is insufficient alone to charge the defendant with liability for such injury, but plaintiff has the burden of introducing evidence sufficient to warrant the inference of fact that the injury was the proximate result of the negligence, and evidence which leaves the matter in mere speculation or conjecture is insufficient.

**4. Same— Evidence held insufficient to show that cerebral hemorrhage after accident was the result of the accident.**

Plaintiff suffered a cerebral hemorrhage some 36 days after the accident in suit. Plaintiff testified that prior to the accident she was in good health and that subsequent thereto she had headaches and nausea, but plaintiff further testified that shortly after the accident she drove her car to another city for repairs and worked continuously from the date of the accident until she had the stroke. Plaintiff's expert witness testified that he found no evidence of skull fracture but that there was a possibility that the stroke resulted from the accident. The testimony of defendant's expert witness, not in conflict with plaintiff's evidence, was to the effect that the hemorrhage was due either to a ruptured aneurism or to high blood pressure, and that in his opinion plaintiff would have had the hemorrhage had she not had the accident. *Held:* The evidence leaves in mere speculation whether the stroke was the result of the accident and is insufficient to be submitted to the jury on that question.

**5. Trial § 22a—**

Evidence which shows it merely possible for the fact in issue to be as alleged or which raises a mere conjecture to that effect is insufficient foundation for a verdict and should not be submitted to the jury.

APPEAL by defendants from *Clark, J.,* February, 1959 Civil Term, HARNETT Superior Court.

Civil action to recover for personal injuries the plaintiff alleged she sustained as a result of the negligent operation of the automobile

owned by the defendant James R. Stevens and operated by his wife, Evelyn K. Stevens. Issues of negligence and contributory negligence, and damages were raised by the pleadings. Both parties introduced evidence.

The evidence favorable to the plaintiff tends to show that on February 14, about one o'clock; p. m., she was driving north through the town of Garner on dominant highway No. 50 when the defendant, Evelyn K. Stevens, driving her husband's Buick, ran through a stop-sign and entered highway No. 50 from St. Mary's Street. In taking the evasive action necessary to protect herself from the collision with the Stevens' vehicle wrongfully entering highway No. 50, the plaintiff was forced off the traveled portion of the highway and down an embankment; that she received certain injuries which were proximately caused by the negligence of Mrs. Stevens in "running the stop-sign." The following is the plaintiff's testimony with respect to her injuries:

"My general physical condition prior to February 14th was perfect. I didn't have any trouble. I had been working for 18 years and had not lost any time from work. I went back to work right after I left Garner and got home and worked until they carried me to the hospital. My head hurt me all the time. It would start in here and go right on up (indicating back of head, to top of head). I had not had any headaches prior to February 14. My head started aching immediately after the wreck. It hurt right on up until they carried me to the hospital. It got worse. My nausea and vomiting got worse. I was not affected with nausea and vomiting prior to the wreck and I was not nervous before the wreck."

On cross-examination, she stated: "I did not go and see any doctor from the date the wreck happened on February 14th until March 22nd when I had the cerebral hemorrhage. I consulted no doctor whatsoever because I thought I was going to get well. . . . From the time of the wreck . . . I continued to work for Mr. Tant. I was in Fayetteville on business for Mr. Tart when I had this trouble on March 22nd."

Dr. Lilly, found to be an expert in the general practice of medicine, testified in substance he examined the plaintiff on March 22, 1957, and found she had suffered a cerebral hemorrhage or stroke. In answer to a hypothetical question whether a blow received in the accident could or might have caused her hemorrhage, he replied: "That is a possibility." Dr. Lilly further testified he found no evidence of skull fracture. "Injury or trauma contribute a very small part to cerebral hemorrhage. I would not say that trauma, particularly, and severe trauma, is the least of all common causes of cerebral hemorrhage. A cerebral hemorrhage itself is extremely infrequent in the absence of

actual skull fracture." It is true that diseases of the blood vessels in the brain account for the greatest portion of strokes or cerebral hemorrhage as age advances. "It is correct to say that her apparent stroke at this time, that is, March 22 or 23, 1957, was simply, or may have been, result of a hemorrhage that had been building up for some time." At the time of his examination, March 22 or 23, Dr. Lilly found evidences of hypertension and "vein nicking." "I know of my own knowledge that she had been hospitalized for high blood pressure or hypertension prior to March 22, 1957, and in fact prior to February 14, 1957." It is a matter of speculation or conjecture as to the cause of the hemorrhage.

Dr. Lilly called in consultation Dr. LeRoy Allen, a neurological surgeon. Later, on February 5, 1958, Dr. Allen examined the plaintiff. He was called as a witness for the defendants. After having been found to be a medical expert in the special field of neurological surgery, he testified: "As to the causes of cerebral hemorrhage, the most common causes are a rupture of a congenital aneurism of the brain, which is a defective, weak wall area in the blood vessel, which has been present since birth, and the other one is high blood pressure with the associated hardening of the arterial walls and, therefore, defective areas in the blood vessel walls associated with the high blood pressure, and arteriosclerosis, or hardening of the arteries. Yes, it is true that this disease of the blood vessels in the brain does account for the greatest number of strokes, . . . That is true in by far the greatest majority—in excess of ninety-five percent, I would say, of all cases. . . . excitement would elevate the blood pressure. . . . there is an increased possibility of that weak spot giving way. . . . There is a type of hemorrhage which can occur by coming out in such a gradual manner that the condition will not be asserted sufficiently for it to become known within a period of some five, six or eight weeks. That is what I would describe as a 'sub-dural hematoma' . . . You have asked me that if it does then assert itself . . . it is likely . . . in the form of a sudden, acute attack. My answer is that it is unlikely to do that. . . . Yes, it is also a fact that the seepage or leakage of blood from a vessel in the brain is likely to cause, . . . nausea, headaches and dizzy spells. . . . No, it is not generally accepted medical fact that the presence of nausea, dizziness and headaches are symptoms which indicate brain damage or increased pressure in the brain cavity. . . . those symptoms which you mentioned are frequently associated with brain conditions, but they are also caused by a variety of other illnesses." They are symptoms of, but do not indicate a brain condition. "My opinion is that she had a cerebral hemorrhage due either to a ruptured aneurism or to high blood pressure."

Without objection, Dr. Allen testified that based on his examination and knowledge of the plaintiff's medical history, in his opinion she would have had the stroke regardless of the accident in which she was injured on February 14, 1957.

The defendants having objected to its introduction, made a motion to strike from the record all evidence relating to cerebral hemorrhage and expenses incurred in the treatment thereof for the reason that the evidence failed to connect the hemorrhage which occurred on March 22 with the accident that occurred on February 14. The motion was denied, to which defendants took their exception No. 14.

The court overruled motions for compulsory nonsuit at the close of all the evidence and submitted the following issues to the jury:

"1. Did the plaintiff sustain a cerebral hemorrhage as a result of the negligence of the defendants, as alleged in the Complaint?

"2. Did the plaintiff sustain any injury as a result of the negligence of the defendants, as alleged in the Complaint?

"3. Did the plaintiff by her own negligence contribute to her own injury?

"4. What damages, if any, is the plaintiff entitled to recover of the defendant?"

In apt time the defendants requested the court to instruct the jury to answer the first issue, "No." To the refusal of the court to do so, the defendants entered exception No. 15.

The jury answered the first and second issues, "Yes," the third issue, "No," and the fourth issue, "$16,000." From the judgment on the verdict, the defendants appealed.

*Edgar R. Bain and Wilson & Johnson, By: W. A. Johnson for plaintiff, appellee.*

*Broughton & Broughton, and D. K. Stewart for defendants, appellants.*

HIGGINS, J.  The evidence favorable to the plaintiff is sufficient to go to the jury on the issue of defendants' actionable negligence in causing the accident on February 14, 1957. It is likewise sufficient to show the plaintiff suffered injury and damage as a result of that accident. Upon a finding of actionable negligence, the showing of damage in any amount will take the case to the jury. Assignment of Error No. 13, therefore, cannot be sustained.

The defendants' assignments of error Nos. 14 and 15 are based on the court's refusal (1) to withdraw from the jury the evidence relating to the cerebral hemorrhage, and (2) to instruct the jury to answer the first issue, "No." These assignments require us to determine wheth-

er there is substantial evidence the plaintiff's cerebral hemorrhage suffered on March 22 resulted from the injury she sustained in the accident on February 14.

The plaintiff's own testimony is quoted in the statement of facts. By way of showing the lights and shadows in the picture she painted of her condition subsequent to the injury, we have the following admissions made by her: After the accident, a short rest, an aspirin, and a coca cola, she drove her automobile from Garner to Raleigh for repairs. A friend drove her to her home in Dunn. She did not call or consult a physician. She worked continuously from the day of the accident until she had the cerebral hemorrhage on March 22.

The lay testimony, including the plaintiff's own evidence, fails to show causal relationship between the accident and the stroke.

The testimony of plaintiff's expert witness, Dr. Lilly, boiled down to its essence is that a causal relationship between the accident and the stroke is a possibility. He was frank to admit the cause of the hemorrhage is a matter of speculation or conjecture. The other medical evidence in the case came from Dr. LeRoy Allen, a neurological surgeon called in consultation by Dr. Lilly, but examined as a witness by the defendants. Inasmuch as Dr. Allen was a witness for the defendants, his evidence may be considered to the extent only that it explains or fills out, but does not contradict, the plaintiff's evidence. Dr. Allen testified the cause of cerebral hemorrhage in more than 95 per cent of the cases is (1) rupture of a congenital aneurism of the brain, or weak wall area in a blood vessel present since birth; and (2) high blood pressure or hardening of the arteries and weakening of the walls in the blood vessels of the brain. "My opinion is she had a cerebral hemorrhage due either to a ruptured aneurism or to high blood pressure. . . . My opinion is she would have had the hemorrhage had she not had the accident."

The medical testimony, added to the other evidence, leaves the causal relationship between the accident and the stroke in the realm of conjecture and speculation. The authorities in this State are uniform in holding such evidence is insufficient to support a verdict and judgment. The rules taken from earlier cases were restated by *Justice Walker* in the case of *Byrd v. Express Co.*, 139 N.C. 273, 51 S.E. 851: "The fact that the defendant has been guilty of negligence, followed by an injury, does not make him liable for that injury, which is sought to be referred to the negligence, unless the connection of cause and effect is established, and the negligent act of the defendant must not only be the cause, but the proximate cause of the injury. . . . The burden was therefore upon the plaintiff to show the defendant's . . . negligence proximately caused his intestate's death, and

the proof should have been of such a character as reasonably to warrant the inference of the fact required to be established, and not merely sufficient to raise a surmise or conjecture as to the existence of the essential fact. . . . 'We may say with certainty that evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict and should not be left to the jury.' . . . 'Judges are no longer required to submit a case to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character as that it would warrant the jury to proceed in finding a verdict in favor of the party introducing such evidence.' "

*Byrd v. Express Co., supra,* was decided in 1905. It was cited with approval by this Court in *Lane v. Bryan,* decided in 1957 and reported in 246 N.C. 108, 97 S.E. 2d 411. Between the decision in *Byrd v. Express Company* and *Lane v. Bryan,* this Court has cited the *Byrd* case with approval in more than forty cases.

In commenting on the rule in the *Byrd* case, *Justice Brogden* had this to say in *Poovey v. Sugar Co.,* 191 N.C. 722, 133 S.E. 12: "This rule is both just and sound. Any other interpretation of the law would unloose the jury to wander aimlessly in the fields of speculation."

We conclude the evidence was insufficient to show causal relationship between the plaintiff's injury in the accident and the cerebral hemorrhage five weeks later. The defendants' motion to strike the evidence relating thereto should have been allowed. The first issue was improperly submitted for lack of evidentiary support.

The trial court having denied the motion to withdraw from the jury the evidence relating to the cerebral hemorrhage, the defendants were entitled to a peremptory instruction to answer the first issue, "No."

For the reasons here assigned the judgment of the Superior Court is set aside. The defendants are entitled to a

New trial.