RICKY CLYDE BROWN, by His Next Friend, LUCILLE P. McNAIR v. JERRY EVON NEAL, MARTIN L. HANCOCK, JR., and SMITH CHEVROLET COMPANY, INC.

No. 83

(Filed 12 July 1973)

1. **Appeal and Error § 45— assignments of error abandoned**

   Assignments of error not brought forward in defendants' brief are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court.

2. **Automobiles § 46; Trial § 15— opinion evidence as to speed of vehicle — objection too late**

   In an action to recover for personal injuries and property damage sustained by plaintiff in a collision between his motorcycle and and automobile, the trial court properly refused to strike plaintiff's testimony that defendant's car "was approaching very fast" where plaintiff had ample opportunity to observe the speed of the vehicle and where defendant did not make any objection until after the question, "Will you describe the movement of the car?" had been answered.

3. **Automobiles § 45— automobile collision case — evidence as to posted speed limit**

   In an automobile collision case the trial court did not err in excluding testimony of defendant designed to rebut plaintiff's tes-

timony that the posted speed limit in the area where the collision occurred was 20 m.p.h.

**4. Damages § 15— personal injury in automobile collision — subsequent back strain — evidence of causal relation required**

Evidence of back strain suffered by plaintiff while engaged in calisthenics as part of his army training could not properly be considered by the jury in determining the amount of damages to be awarded for an injury which occurred two years earlier in an automobile collision in the absence of expert medical testimony or other competent and substantial evidence as to a causal relation between the two; nevertheless, it was not error to permit the plaintiff first to testify as to the pain he experienced and thereafter to introduce evidence as to its causal relation to the injury for which he sued.

**5. Automobiles § 45— automobile collision case — evidence of defendant's solicitude for injured plaintiff**

Defendant is not entitled to a new trial in an automobile collision case where the court struck part of defendant's answer to a question designed to show his solicitude for the injured plaintiff at the scene of the collision.

**6. Damages §§ 3, 16— damages for future pain — instruction unsupported by evidence**

Where there was no evidence whatever that the plaintiff, as of the time of the trial, would suffer any pain or disability in the future, and none affording any reasonable basis for a finding of a causal connection between the injury for which he sued and any pain or disability which he might experience after trial, it was error to instruct the jury that they might award damages for pain or disability likely to occur in the future.

**7. Appeal and Error § 62— erroneous instruction on damages — partial new trial awarded**

Since the only error in the trial court related to the jury charge on the measure of damages recoverable by the plaintiff and had no bearing upon the jury's determination of the negligence of defendant as the proximate cause of plaintiff's injury, the Supreme Court, in its discretion, awards a partial new trial limited solely to the issue of damages.

APPEAL by defendants Neal and Smith Chevrolet Company, Inc., from *McLean, J.*, at the 10 July 1972 Session of GASTON, heard prior to determination by the Court of Appeals.

This is a suit for personal injuries and property damage alleged to have been sustained by the plaintiff in a collision between his motorcycle and a Chevrolet automobile owned by Hancock and driven by Neal, an employee of Smith Chevrolet Company, Inc., a bailee of the automobile for repair. Prior to trial the plaintiff voluntarily dismissed his action against the defendant Hancock. Neal and Smith Chevrolet Company, Inc.,

filed answer admitting that Neal was driving the automobile in the course of his employment. The jury found the plaintiff was injured and damaged by the negligence of these defendants, that he was not guilty of contributory negligence and that he sustained damages in the amount of $10,000 by reason of his personal injuries and $400.00 by reason of damage to his motorcycle. From a judgment in accordance with the verdict, the defendants Neal and Smith Chevrolet Company, Inc., appeal.

The following facts are not in dispute: The collision occurred at 3:20 p.m. on 11 January 1967, at the intersection of North Chester Street and Airline Avenue, in the business district of Gastonia. As a result, the plaintiff's motorcycle was damaged and the plaintiff was thrown to the pavement and sustained some personal injury. Both vehicles were traveling on North Chester Street, a four lane street. The plaintiff, on his motorcycle, was proceeding southwardly; Neal, in the automobile, was proceeding northwardly. The traffic light was green for both of them. To the north of this intersection, the direction from which the plaintiff came, three of these lanes are designated for southbound vehicles, the left, or innermost, being designated for use only by vehicles making a left turn. To the south of the intersection, the side from which Neal approached, two lanes are designated for northbound vehicles, the left, or innermost, being designated for use only by vehicles making a left turn. Thus, the two lanes designated for left turning vehicles abut each other across Airline Avenue. Airline Avenue runs along the top of a ridge so that vehicles, approaching the intersection from either side along North Chester Street, are proceeding uphill and their operators do not have a full view of an oncoming vehicle approaching the intersection from the other side of Airline Avenue. At the time of the collision the plaintiff was 17 years of age. Thereafter, he entered the United States Army and served in Vietnam, which contributed to the delay in bringing this action to trial.

The plaintiff alleged in his complaint that both he and Neal approached the intersection in the respective lanes marked for left turning vehicles only, that before the plaintiff reached the intersection Neal negligently drove through the intersection, struck the motorcycle, damaging it and throwing the plaintiff to the pavement, and that the plaintiff thereby sustained painful and permanent injuries, including a fractured pelvis, dislocated vertebrae and a fractured thumb, of which injuries and damage the negligence of Neal was the proximate cause.

Brown v. Neal

The defendants answered, denying negligence by Neal and pleading contributory negligence by the plaintiff as an affirmative defense. They allege that Neal approached the intersection in the proper lane for through northbound traffic, his extreme right hand lane, and proceeded through the intersection in that lane. They allege that immediately prior to the collision the plaintiff, who had been approaching the intersection in his proper lane for a left turn, suddenly, and without warning of his intent to do so, turned sharply to his left and into the lane for northbound traffic, directly into the path of the automobile.

The plaintiff's testimony as to the cause of the accident was to this effect: Heading south and uphill, he approached the intersection, moved over into his left turn lane, signalled for a left turn and slowed down to about 10 miles per hour. He observed the automobile in the lane directly in front of him; that is, in the lane for northbound vehicles intending to turn left on Airline Avenue. The collision occurred before he entered the intersection. At no time did he get into the lane for through northbound traffic. When he saw the automobile coming through the intersection, he applied his brakes and was almost stopped at the time of the collision. The automobile struck the left side of his motorcycle and knocked him to the pavement. Both vehicles came to rest north of the plaintiff as he lay on the pavement, the automobile stopping slightly less than 80 feet north of the intersection, partly in the lane for through northbound traffic and partly in the lane for left turning southbound traffic, the plaintiff's lane.

As to his injuries, the plaintiff's testimony was to the following effect: He was hospitalized for a month and was confined to his bed at home for two additional weeks. He sustained a broken thumb, several bad cuts on his feet and legs and a large bruise inside his thigh. In the hospital he was kept in restraining straps about his pelvis to keep him from moving. Upon his admission to the hospital he was given a blood transfusion and was given glucose for two weeks. Two weeks after his admission to the hospital he was having headaches. Following his discharge from the hospital, he was unable to stand and move about without developing a severe headache. After taking pain relievers, prescribed by his family physician, for some time, he consulted and received a series of treatments from a chiropractor. He missed six weeks of school but finished his high school education and entered the University of North Carolina

at Chapel Hill the following fall. There, he again suffered from headaches. He wore a neck brace prescribed by the chiropractor but experienced no improvement in the headaches. After a year and a half at the University, he withdrew and entered the United States Army as a volunteer. He served in Vietnam as a helicopter pilot. While in Vietnam he experienced difficulty with his back on several occasions. On one of these he was grounded for four days while receiving medical treatment for pain in his back. Concerning his continuing disabilities at the time of the trial, more than five years after the accident, he testified: "It tends to get stiff when I sit or something, it pops, my neck and back both. It kind of cracks and hurts. It pops. It hurts when it pops and also if it pops too often. If I do it too much, I develop a headache. * * * I have several scars on my lower feet and lower legs and bruises from this accident —a numb place on the inside of my left thigh. It stays that way." His doctor and hospital bills, introduced in evidence without objection, totaled $1,352.50. His motorcycle was damaged in value to the extent of $650. At the time of the trial the plaintiff was still in service, his rank being Chief Warrant Officer. He is not restricted in his military duties but has to sleep with a plywood board on his bed and cannot use a pillow without developing a severe headache.

Dr. Roberts, an orthopedic specialist who attended the plaintiff in the hospital, was subpoenaed as a witness but was unable to attend the trial. By agreement, his report and that of Dr. Miller, also an attending physician while the plaintiff was hospitalized, were read to the jury. Dr. Roberts' report showed the plaintiff's injuries were a fracture-dislocation of the pelvis and a fracture of the left thumb, that an X-ray in the doctor's office on 23 February 1967 showed definite improvement in the separation of the symphysis and sacroiliac joints and that the plaintiff was expected to return after one month but did not do so. Dr. Miller's report showed his final diagnosis was, "Fracture of the sacrum, separation of the symphysis pubis and left sacroiliac," and that on the plaintiff's discharge from the hospital on 6 February 1967 his condition was "Improved."

Dr. Gillman, the attending chiropractor, testified that he gave the plaintiff 58 treatments from February through October, that the plaintiff was suffering from headaches and that there was a large amount of rotation of the cervical vertebrae indicating severe nerve pressure, the third cervical vertebra

being "extremely out of position." When he discharged the plaintiff in October following the collision, it was his opinion that the plaintiff was well and all vertebrae had been realigned.

The defendant's evidence related entirely to the circumstances of the accident. It consisted of the testimony of Neal and his companion, a fellow employee who was riding in the car to assist Neal in locating a "wind noise" in the car. The substance of their testimony was: Neal was at all times driving within the lane for through northbound traffic at a speed of about 30 miles per hour. As he approached the intersection, going uphill, he noticed the oncoming motorcycle approaching the intersection in its left turn lane. He thought it was stopping. Instead, it turned straight into Neal's lane and struck the front of the automobile about midway of the intersection in the lane for through northbound traffic. He observed no signal by the plaintiff indicating his intent to turn left. There was no other vehicle in front of Neal as he approached the intersection. At the time of the collision he was driving about 20 miles per hour. He was not listening for the wind noise as he had to get out of the city in order to drive fast enough for it to become audible. As soon as he realized the motorcycle was turning to its left, he applied the brakes of the automobile, but did not have time to swerve to avoid the collision. The motorcycle entered the intersection first. After the impact the front end of the automobile went approximately five feet beyond a telephone pole in the northeast corner of the intersection. Immediately after the collision the plaintiff told Neal he did not see the automobile. (The plaintiff on rebuttal denied making this statement.)

The police officer who investigated the collision died prior to the trial.

*Childers & Fowler by Henry L. Fowler, Jr., for plaintiff.*

*Mullen, Holland & Harrell, P.A., by Philip V. Harrell for defendants.*

LAKE, Justice.

[1] Of the defendants' twenty assignments of error only Numbers 1, 3, 5, 7 and 20 are brought forward into their brief. The remainder are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court; *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789; *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526. Of those

---

Brown v. Neal

---

brought forward and preserved for our consideration, all save No. 20 relate to rulings of the trial judge on the admissibility of evidence. Of these only Assignments 3 and 7 relate to the issue of negligence.

[2]  Assignment of Error No. 3 is that the court erred in denying the defendants' motion to strike the plaintiff's testimony that the car "was approaching very fast." The plaintiff had previously testified that he first observed the car on the other side of the intersection, in the left turn lane, about 80 feet from the plaintiff and that it came directly at him. There is no suggestion of any intervening traffic or other obstruction. The plaintiff had ample opportunity to observe whether the oncoming vehicle was approaching slowly, fast or very fast. *Murchison v. Powell,* 269 N.C. 656, 153 S.E. 2d 352; Strong, N. C. Index 2d, Automobiles, § 46. Furthermore, the record shows no objection until after the answer to the question, "Will you describe the movement of the car?" It came too late. Stansbury, North Carolina Evidence, 2d Ed., § 27. There is no merit in this assignment of error.

[3]  In his Assignment of Error No. 7, the defendant complains of the court's excluding testimony of the defendant Neal designed to rebut the plaintiff's testimony that "the posted speed limit" in the area where the collision occurred was 20 miles per hour. The defendant was asked, "What is the closest traffic control sign that you know of between Main and Chester Streets and the scene of the accident?" Had the witness been permitted to answer, he would have testified, "None." He had previously testified that the intersection of Main and Chester Streets, at which point he entered Chester Street, was only 175 feet from the point of collision and his testimony immediately preceding this question was, "A traffic light is the only speed control signs [sic] or devices [sic] between Main Street and Chester and Chester and Airline." There is no merit in this assignment of error.

The remaining exceptions brought forward into the appellant's brief relate solely to the issue of damages. "The law is well settled in this jurisdiction that in cases of personal injuries resulting from defendant's negligence, the plaintiff is entitled to recover the present worth of all damages naturally and proximately resulting from defendant's tort. The plaintiff, *inter alia,* is to have a reasonable satisfaction for actual suffering, physical and mental, which are [sic] the immediate and necessary con-

---

---

sequences of the injury. The award is to be made on the basis of a cash settlement of the plaintiff's injuries, past, present, and prospective." *King v. Britt,* 267 N.C. 594, 148 S.E. 2d 594. However, "[t]he doctrine of proximate cause which determines the existence of liability for negligence is equally applicable to liability for particular items of damage. To hold a defendant responsible for a plaintiff's injuries, defendant's negligence must have been a substantial factor, that is, a proximate cause of the *particular* injuries for which plaintiff seeks recovery." *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753.

[4] The defendants' Assignment of Error No. 1 is that the court erred in permitting the plaintiff, over objection, to testify to certain pains and difficulties experienced in his lower back while taking calisthenics in the course of his army training and while he was in military service in Vietnam, more than two years after the injury for which he sues. He described these pains and difficulties as being in the same general area as the injury received in the collision. His testimony did not disclose any like difficulties with his lower back between his discharge from the hospital and his induction into the army.

The burden is upon the plaintiff to prove not only that he experienced the pain and difficulty with his back but also that the proximate cause of these was the injury sustained in the collision for which he sues. McCormick on Damages, 25A, § 14; C.J.S., Damages, § 162(6). A mere possibility of a causal relation between the two is not sufficient to permit the jury to consider the pain and difficulty experienced two years later in determining the amount of damages to be awarded for the earlier injury. *Lee v. Stevens,* 251 N.C. 429, 111 S.E. 2d 623. It is a matter of common knowledge that one engaged in strenuous activity, such as calisthenics or military combat flying duty, may experience sudden, severe back strain and discomfort, followed by stiffness lasting several days, with no history of previous back injury. The mere proof of such back strain, without more, gives the jury no basis for knowledge as to whether it resulted from an injury sustained in an automobile collision two years earlier. Such evidence may not properly be considered by the jury in determining the amount of damages to be awarded for the earlier injury in absence of expert medical testimony, or other competent and substantial evidence, as to a causal relation between the two. *Gillikin v. Burbage, supra;* Strong, N. C. Index 2d, Damages, § 15.

Nevertheless, it was not error to permit the plaintiff first to testify as to the pain he experienced and thereafter to introduce evidence as to its causal relation to the injury for which he sues. In overruling the objection by the defendants to this testimony as to the pain and difficulty experienced in Vietnam, the court said, "If it doesn't connect, I will strike it." Almost immediately thereafter, there was a motion by the defendants to strike, which was denied, but this motion appears to have been directed at other, intervening testimony by the plaintiff concerning the nature of the calisthenic exercises he took in the army. If this motion to strike related to the evidence of which the defendants now complain, it was premature. Assignment of Error No. 1 affords no basis for a new trial.

[5] Assignment of Error No. 5 is directed to the striking of part of the defendant Neal's answer to a question designed to show his solicitude for the injured plaintiff at the scene of the collision. The plaintiff testified, without objection, that when Neal got out of the car, immediately after the collision, he walked around the car and looked at it before going over to where the plaintiff lay on the pavement. In rebuttal Neal testified, without objection, "After my vehicle came to rest, I got out of the car and rushed to Mr. Brown immediately." He was then asked by his attorney, "Prior to rushing over to Mr. Brown as he was located to the left of your car, did you examine your car in any way?" He replied, "No, sir. The car didn't matter to me at all." Thereupon, the plaintiff objected and moved to strike, which motion was allowed, the court saying, "Members of the jury, you will not consider his attitude towards the car." The defendant now assigns this as error, contending that the plaintiff's testimony had a tendency to show callous disregard for the plaintiff on the part of Neal and that the stricken statement by Neal was admissible to rebut such inference. This assignment does not afford a basis for a new trial.

[6] The defendants' Assignment of Error No. 20 is directed to the following statement in the charge of the court on the issue of damages:

> "The sum fixed by the jury should be such as to fairly compensate the plaintiff for injuries sustained in the past and those likely to occur in the future. The award is to be made on the basis of a cash settlement of the plaintiff's injuries, past, present, and prospective."

Brown v. Neal

That this is a proper statement of the rule as to the measure of damages for personal injuries where there is sufficient evidence of pain, disability or other injury continuing into the future to justify consideration thereof by the jury, is well settled. *King v. Britt, supra; Mintz v. R. R.,* 233 N.C. 607, 65 S.E. 2d 120; Strong, N. C. Index 2d, Damages, § 3. In the present instance, however, the trial judge inadvertently overlooked the fact that there was no evidence whatever that the plaintiff, as of the time of the trial, would suffer any pain or disability in the future, and none affording any reasonable basis for a finding of a causal connection between the injury for which he sues and any pain or disability which he might experience after the trial. Under these circumstances, it was error to instruct the jury that they might award damages for pain or disability "likely to occur in the future." By so doing, the court inadvertently invited the jury to speculate as to whether the plaintiff would experience pain or disability in the future, and if so, how much, and as to whether, if such pain or disability should occur, it would have a causal connection with the injury sustained in the collision which is the subject of this action.

As Justice Sharp, speaking for the Court in *Gillikin v. Burbage, supra,* observed:

"The jurors were left to speculate about a matter which frequently troubles even orthopedic specialists. * * * There can be no recovery for a permanent injury unless there is some evidence tending to establish one with reasonable certainty. * * * Where, however, the injury is *subjective* and of such a nature that laymen cannot, with reasonable certainty, know whether there will be future pain and suffering, it is necessary, in order to warrant an instruction which will authorize the jury to award damages for permanent injury, that there 'be offered evidence by expert witnesses, learned in human anatomy, who can testify, either from a personal examination or knowledge of the history of the case, or from a hypothetical question based on the facts, that the plaintiff, with reasonable certainty, may be expected to experience future pain and suffering as a result of the injury proven.' *Shawnee-Tecumseh Traction Co. v. Griggs,* 50 Okla. 566, 568, 151 Pac. 230, 231; Annot., * * * 115 A.L.R. 1149."

The testimony of Dr. Gillman, the chiropractor who treated the plaintiff, was:

"During the time I was treating him, I did not at any time become concerned about his condition to the point that I felt like he should go to an orthopaedist or any other type of doctor. It was my opinion that he was doing nicely and making progress as I proceeded in treatment. *In my opinion when I discharged him, he was well.*" (Emphasis added.)

The reports of Dr. Roberts and Dr. Miller, both of whom attended the plaintiff while he was in the hospital, do not suggest any apprehension of permanent disability. Both anticipated that the plaintiff would return for further observation, which he did not do. Nothing in the plaintiff's testimony indicates that the difficulties he experienced with his back while in military service in Vietnam continued over any extended period of time or substantially impaired the performance of his military duties. He is still on active duty.

The plaintiff's own testimony in relation to his condition at the time of trial is as follows:

"It [his back] tends to get stiff when I sit or something, it pops, my neck and back both. It kind of cracks and hurts. It pops. It hurts when it pops and also if it pops too often. If I do it too much, I develop a headache. * * * I have several scars on my lower feet and lower legs [not otherwise described and not shown in the record to have been exhibited to the jury] and bruises from this accident—a numb place on the inside of my left thigh. It stays that way * * * [for any pain experienced as of the time of the trial he simply took aspirin, or something like aspirin]. I can't sleep with a pillow. If I sleep with my head raised at all at night, I have a real bad headache. I have to sleep perfectly flat. I am not restricted in any way with my military duties as a result of being physically disabled. I just try to be careful. * * * I have been sleeping on this plywood board with no pillow ever since the wreck. I have to put a board under my mattress to make it firm and comfortable."

To permit the jury, on this evidence, to award damages for "injuries * * * likely to occur in the future" is to inject pure speculation into the award. In *Short v. Chapman,* 261 N.C. 674,

Brown v. Neal

682, 136 S.E. 2d 40, Justice Parker, later Chief Justice, speaking for the Court, said:

> "Where there is evidence from which a conclusion of permanent injury proximately resulting from the wrongful act may properly be drawn, the court should charge the jury so as to permit its inclusion in an award of damages. On the other hand, where there is not sufficient evidence of the permanency of an injury proximately resulting from the wrongful act, the court should not give an instruction allowing the jury to assess damages for permanent injuries. To warrant an instruction permitting an award for permanent injuries, the evidence must show the permanency of the injury and that it proximately resulted from the wrongful act with reasonable certainty. While absolute certainty of the permanency of the injury and that it proximately resulted from the wrongful act need not be shown to support an instruction thereon, no such instruction should be given where the evidence respecting permanency and that it proximately resulted from the wrongful act is purely speculative or conjectural."

In the Short case the defendant, in support of her counterclaim, testified that at the time of the trial her leg still hurt, had never gotten better, and had a numbness. Her doctor expressed no opinion that her injuries were permanent and no opinion as to the cause of the pain and numbness in her leg. He was not called as a witness. Upon that evidence, this Court said:

> "Is this condition permanent, and was it proximately caused by the wrongful act of the plaintiff? Is this numbness in her left leg caused or contributed to by the injuries she sustained in the collision, or is it caused or contributed to by poor circulation or arthritis? Defendant's evidence gives no answer; it is left in the realm of conjecture and speculation. The record has no evidence that would permit a jury to find with reasonable certainty that she sustained any permanent injury as a proximate result of the collision. The instruction permitting the jury to award damages for permanent injury was highly prejudicial to plaintiff, because it is apparent from the evidence in the record of defendant's injuries, and of her continuing complaints of pain, which complaints of pain are subjective in character, and from the size of the verdict that the jury awarded

defendant damages on the theory she had sustained permanent injuries proximately resulting from the collision."

In this respect there is no distinction between recovery for "permanent" disability and recovery for "prospective" pain and suffering. Obviously, *Short v. Chapman, supra,* is squarely in point upon the question here presented to us and this assignment of error by the present defendant must be sustained.

[7] The remaining question is as to the extent of the new trial to be granted. There was no error in the trial below upon the question of liability of the defendants to the plaintiff for damages. The conflict in the evidence of the plaintiff and that of the defendants on that question was for the jury, which resolved it in favor of the plaintiff. The error in the charge of the court related only to the measure of damages recoverable by the plaintiff and had no bearing upon the jury's determination of the negligence of the defendant Neal as the proximate cause of the plaintiff's injury.

In *Godwin v. Vinson,* 254 N.C. 582, 587, 119 S.E. 2d 616, Justice Parker, later Chief Justice, having found an error in the instruction of the trial judge on the measure of damages, speaking for the Court, said:

"The statement of *Walker, J.,* for the Court in *Lumber Co. v. Branch,* 158 N.C. 251, 73 S.E. 164, has been quoted many times with approval: 'It is settled beyond controversy that it is entirely discretionary with the Court, Superior or Supreme, whether it will grant a partial new trial. It will generally do so when the error, or reason for the new trial, is confined to one issue, which is entirely separable from the others and it is perfectly clear that there is no danger of complication.'

"This case comes within the rule stated by *Justice Walker* as to when a partial new trial will be ordered. We perceive no good reason why attachment defendant should again be put to trial on the first, second and third issues. In awarding a partial new trial upon the fourth issue [damages] alone, we find precedents in our following decisions: *Lieb v. Mayer,* 244 N.C. 613, 94 S.E. 2d 658; *Hinson v. Dawson,* 241 N.C. 714, 86 S.E. 2d 585; *Journigan v. Ice Co.,* 233 N.C. 180, 63 S.E. 2d 183; *Pinnix v. Griffin,* 221 N.C. 348, 20 S.E. 2d 366; *Jackson v. Parks,* 220 N.C. 680, 18 S.E. 2d 138; *Messick v. Hickory,* 211 N.C. 531, 191 S.E.

43; *Gossett v. Metropolitan Life Ins. Co.,* 208 N.C. 152, 179 S.E. 438; *Johnson v. R.R.,* 163 N.C. 431, 79 S.E. 690; Ann. Cas. 1915B 598; *Rushing v. R. R.,* 149 N.C. 158, 62 S.E. 890."

. . In *Johnson v. Lewis,* 251 N.C. 797, 112 S.E. 2d 512, Justice Parker, again speaking for the Court, in an action for personal injuries caused by the negligence of the defendant, found error in the charge as to the measure of damages recoverable by one of the plaintiffs. He said, "We perceive no good reason why the infant Efird Johnson should again be put to trial on the first and second issues." Thereupon, relying upon the same authorities cited by him in *Godwin v. Vinson, supra,* this Court awarded the defendant a new trial "limited, however, to the issue of damages." We are of the opinion that the same rule should apply in the present case and, therefore, order a new trial, limited to the issue of damages.

Partial new trial.