GAINES v. CUMBERLAND CTY. HOSP. SYS., INC.

[195 N.C. App. 442 (2009)]

AJAMU GAINES, JR., A MINOR, BY AND THROUGH HIS GUARDIAN AD LITEM, SCOTT HANCOX; AND
AJAMU GAINES, SR., PLAINTIFFS v. CUMBERLAND COUNTY HOSPITAL SYSTEM,
INC., A/K/A CAPE FEAR VALLEY HEALTH SYSTEM AND/OR CAPE FEAR VALLEY
MEDICAL CENTER; CAPE FEAR ORTHOPAEDIC CLINIC, P.A.; KAREN JONES,
M.D.; THOMAS R. TETZLAFF, M.D.; AND JOHNNY KEGLER, A/K/A JASON WILLIS,
CAROLINA REGIONAL RADIOLOGY, P.A.; AND BEVERLY A. DAVIS, M.D.,
DEFENDANTS

No. COA07-1419

(Filed 17 February 2009)

**Medical Malpractice— failure to detect child abuse—proximate cause of injuries—burden of proof not met**

The trial court did not err by granting summary judgment for the health care provider defendants on a medical malpractice claim for not detecting child abuse where X-rays intended to rule out aspiration pneumonia following surgery showed an old rib injury. Plaintiff's burden of showing proximate cause was not satisfied by speculative testimony from a pediatrician that rested on a series of inferences about the possibility that subsequent injuries could have been prevented had .defendants acted differently.

Appeal by plaintiffs from judgment entered 17 April 2007 by Judge Ola M. Lewis in Cumberland County Superior Court. Heard in the Court of Appeals 14 May 2008.

*Faison & Gillespie, by Reginald B. Gillespie, Jr., and Conley Griggs LLP, by Cale H. Conley, Richard A. Griggs, and William S. Britt, for plaintiffs-appellants.*

*Cranfill, Sumner & Hartzog, LLP, by Norwood P. Blanchard, III, John D. Martin, and Katherine C. Wagner, for defendant-appellee Thomas R. Tetzlaff, M.D.*

*Helms Mulliss Wicker, PLLC, by Mark E. Anderson and Andrew. H. Nelson, for defendant-appellee Cumberland County Hospital System, Inc., a/k/a Cape Fear Valley Health System and/or Cape Fear Valley Medical Center.*

*Manning, Fulton & Skinner, PA, by Robert S. Shields, Jr., and Katherine M. Bulfer, for defendants-appellees Beverly A. Davis, M.D. and Carolina Regional Radiology, P.A.*

*Ellis & Winters LLP, by Alex J. Hagan, for defendants-appellees Cape Fear Orthopaedic Clinic, P.A. and Karen V. Jones, M.D.*

GAINES v. CUMBERLAND CTY. HOSP. SYS., INC.

[195 N.C. App. 442 (2009)]

STEELMAN, Judge.

Where plaintiffs failed to establish causation, the trial court did not err in granting summary judgment in favor of the healthcare-provider defendants.

## I. Factual and Procedural Background

On the evening of 15 April 2003, the minor plaintiff, Ajamu Gaines, Jr., was brought to the Emergency Department at Cape Fear Valley Medical Center ("the Hospital") by his mother, Wyenda Phelps, with a wrist fracture reportedly sustained from falling or jumping off a porch. An x-ray of Ajamu's wrist was taken and reviewed by Dr. Beverly A. Davis. It was determined that orthopedic assistance would be required to treat Ajamu's wrist, and the Hospital called Dr. Karen V. Jones, an orthopedic surgeon, to treat the wrist. Dr. Jones determined that surgery would be required to treat the break, and Ajamu was transferred to the operating room. During the surgery, Ajamu vomited, which caused the anesthesiologist, Dr. Elisabeth Schaider, to order a chest x-ray to rule out possible aspiration pneumonia. Dr. Jones also ordered a chest x-ray for the same reason. Dr. Schaider reviewed the chest x-ray and reported in the medical record that the films were clear. Dr. Davis also read the x-ray and reported that the lung fields were clear. Additionally, Dr. Davis noted in her radiology report that "[t]here is an old-appearing fracture deformity left 9th rib posterolateral." Dr. Jones relied on Dr. Schaider's review of the x-ray.

Because Ajamu vomited during surgery, Dr. Thomas R. Tetzlaff, a pediatrician, was consulted to confirm that Ajamu was not at risk of developing aspiration pneumonia. Dr. Tetzlaff ordered another chest x-ray to verify that Ajamu had not developed aspiration pneumonia. The x-ray was clear and showed no signs of aspiration. Ajamu was discharged on 16 April 2003.

On 3 July 2003, Ajamu returned to the Hospital with a severe head injury. It was reported that earlier that day he was eating ice cream and began shaking on the floor. It was also reported that he had hit his head falling or jumping off a counter a week earlier.

On the night of 10 July 2003, Dr. Sharon Cooper examined Ajamu and reviewed his records. Dr. Cooper suspected child abuse and reported Ajamu's case to the Department of Social Services ("DSS"). DSS began an investigation, and on 17 July 2003, a multidisciplinary team at the Hospital concluded that Ajamu's injuries were suffered as a result of child abuse by defendant Kegler, Wyenda Phelps' live-in

boyfriend. As a result of the injuries inflicted by Kegler, Ajamu is a quadriplegic.

On 1 September 2005, plaintiffs filed a complaint against defendants Cumberland County Hospital System, Inc., a/k/a Cape Fear Valley Health System and/or Cape Fear Valley Medical Center; Cape Fear Orthopaedic Clinic, P.A.; Karen Jones, M.D.; Thomas R. Tetzlaff, M.D.; and Johnny Kegler, a/k/a Jason Willis. On 12 April 2006 plaintiffs filed an amended complaint, adding claims against Carolina Regional Radiology, P.A. and Beverly A. Davis, M.D. Plaintiffs alleged that defendants were negligent in that they "failed to discover or diagnose . . . prior abuse and/or neglect of Ajamu Gaines, Jr., despite the availability of existing evidence that would give rise to a suspicion of such abuse and neglect[.]" Plaintiffs further asserted that there was a causal link between defendants' alleged negligence and Ajamu's injuries. On 30-31 January 2007, all defendants except Johnny Kegler filed motions for summary judgment, which were presented as "one joint motion from all defendants." An order granting the motion for summary judgment was entered 17 April 2007, concluding that "there is no genuine issue as to any material fact . . . and that the moving defendants are entitled to judgment as a matter of law." Plaintiffs appeal.

## II. Proximate Cause

In their first argument, plaintiffs contend that the trial court erred in granting summary judgment on the grounds that there were genuine issues of material fact as to whether Ajamu's injuries were proximately caused by any negligence of defendants. We disagree.

Our standard of review of a trial court's ruling on a motion for summary judgment is *de novo*, and "this Court's task is to determine, on the basis of the materials presented to the trial court, whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." *Coastal Plains Utils., Inc. v. New Hanover Cty.*, 166 N.C. App. 333, 340, 601 S.E.2d 915, 920 (2004) (citation omitted). "There is no genuine issue of material fact where a party demonstrates that the claimant cannot prove the existence of an essential element of his claim . . ." *Harrison v. City of Sanford*, 177 N.C. App. 116, 118, 627 S.E.2d 672, 675 (2006) (citation omitted). In a negligence action, plaintiff must "offer legal evidence tending to establish beyond mere speculation or conjecture every essential element of negligence, and upon failure to do so, [summary judgment] is proper." *Young v. Fun Services-*

*Carolina, Inc.*, 122 N.C. App. 157, 162, 468 S.E.2d 260, 263 (1996) (quoting *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 68, 414 S.E.2d 339, 345 (1992)). The burden is on the moving party to establish the lack of a triable issue. *Lord v. Beerman,* 191 N.C. App. 290, 293, 664 S.E.2d 331, 334 (2008). "All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Collingwood v. G.E. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citation omitted).

In an action alleging medical malpractice, in order to survive summary judgment, a plaintiff must "demonstrate . . . that the treatment administered by defendant was in negligent violation of the accepted standard of medical care in the community and that defendant's treatment proximately caused the injury." *Ballenger v. Crowell,* 38 N.C. App. 50, 54, 247 S.E.2d 287, 291 (1978) (citation omitted).

> North Carolina appellate courts define proximate cause as "a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed."

*Williamson v. Liptzin,* 141 N.C. App. 1, 10, 539 S.E.2d 313, 319 (2000) (quoting *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)). "To hold a defendant responsible for a plaintiff's injuries, defendant's negligence must have been a substantial factor . . . of the *particular* injuries for which plaintiff seeks recovery." *Brown v. Neal,* 283 N.C. 604, 611, 197 S.E.2d 505, 509 (1973) (citation omitted).

In support of their argument on proximate cause, plaintiffs rely almost entirely on the deposition testimony of Dr. Cooper, a pediatrician, who testified, in part:

> My opinion is that the team based at the hospital responsible for the care and well-being of Ajamu [] did not act accordingly on the 15th and 14th [sic] of April, 2003, thereby clearly contributing as [] a proximate cause to the ultimate outcome of this catastrophic head trauma injury. . . .
>
> [I]f any one of all of these people who were involved in the care of this little boy had taken the time to simply pick up the phone

and report to an agency for which their only job is to investigate possible suspicions of child abuse, I sincerely believe that Ajamu Gaines would not be an almost 11-year-old boy functioning at the 9-month level with severe mental retardation, cerebral palsy and no potential for normal development in life. . . .

I do believe that DSS would have more likely accepted this referral—this report and would have investigated and at the very minute—minimum put into place a Protection Plan for this child. . . .

I believe that had a Protection Plan been put into place, the likelihood would be very great that Ajamu Gaines would have been protected because I believe that Mr. Kegler, the caregiver, would no longer have remained in that home.

While Dr. Cooper did testify regarding what she believed was more likely than not the proximate cause of Ajamu's injuries, her testimony was based on speculation and was not grounded in fact. Dr. Cooper expressed her opinion regarding a series of inferences that: (1) had the healthcare-provider defendants pursued an investigation of potential abuse of Ajamu in April 2003, they would have reported the situation to DSS; (2) DSS would have accepted the report for investigation and would have subsequently substantiated it; (3) as a result of the substantiated report, either Ajamu or defendant Kegler would have been removed from the home; and (4) if either Ajamu or Kegler had been removed from the home, the child abuse occurring in July 2003 would not have taken place.

Dr. Cooper did not testify that the healthcare-provider defendants violated the applicable medical standard of care in their treatment of Ajamu's injuries in April 2003, but instead that, had defendants acted differently, there was a possibility that the injuries to Ajamu would have been prevented. As such, this evidence was insufficient to satisfy plaintiffs' burden of showing proximate cause. *Lane v. Bryan*, 246 N.C. 108, 112, 97 S.E.2d 411, 413 (1957) (if plaintiff relies on circumstantial evidence to establish negligence, every piece of circumstantial evidence must be a reasonable inference directly connected to an established fact); *see also Hopkins v. Comer*, 240 N.C. 143, 151, 81 S.E.2d 368, 374 (1954) ("Cases cannot be submitted to a jury on speculations, guesses or conjectures."); *Beerman* at 295, 664 S.E.2d at 335 ("Even where a plaintiff has introduced some evidence of a causal connection between the defendant's failure to diagnose or intervene sooner and the plaintiff's poor ultimate medical

outcome, our Court has held that such evidence is insufficient if it merely speculates that a causal connection is possible.").

Plaintiffs failed to establish an essential element of their negligence claim, and we hold that the trial court did not err in granting summary judgment in favor of the healthcare-provider defendants. *See Fun Services-Carolina, Inc.* at 162, 468 S.E.2d at 263.

AFFIRMED.

Judges ROBERT C. HUNTER and STEPHENS concur.