JACQUELINE HOLMES WILKERSON, ADMINISTRATRIX OF THE ESTATE OF JOE RADFORD WILKERSON, PLAINTIFF v. LEWIS THOMAS CLARK AND DAVID JUDSON CLARK, T/A CLARK CHEVROLET COMPANY, DEFENDANTS.

(Filed 19 May, 1965.)

**1. Automobiles § 41a—**

Actionable negligence may be established by evidence of facts and circumstances from which negligence may be inferred as the more reasonable probability.

**2. Automobiles § 38— Whether speeding car seen by witness was that driven by defendant and whether speed was continued to accident held for jury.**

The evidence tended to show that defendant driver and his passenger were riding in a particular make of automobile on a highway which had not been opened to traffic, that the driver passed an exit ramp and then cut right across the median between his lane of travel and the ramp, and lost control, resulting in the injury in suit. Plaintiff offered testimony of a witness that at about 12:05 p.m. he saw a lone vehicle of the particular make travel for a distance of six-tenths of a mile on the unopened highway, and that when he last saw it, some two-tenths of a mile from the scene of the accident, where the wrecked car was found at about 2:45 p.m., it was traveling some 80 miles per hour. *Held:* The testimony as to speed is not so remote in time or place as to be incompetent, and the evidence should have been admitted under instruction of the court that if the jury should find from the greater weight of the evidence that the car which the witness had seen was the car driven by defendant and that the wreck occurred after its uninterrupted travel from where he saw it to the scene of the accident, the jury should consider it upon the question of speed, the weight of the evidence being for the jury.

**3. Appeal and Error § 41—**

Where the only evidence as to speed of the car driven by defendant is the competent testimony of an eyewitness and the inferences arising from the physical facts at the scene, the exclusion of the testimony of the witness must be held for prejudicial error notwithstanding it was before the jury over a day before the court excluded it, since it cannot be assumed that the jury failed to comply with the court's instruction not to consider the testimony.

APPEAL by plaintiff from *Copeland, Special Judge,* October 1964 Regular Session of WAKE.

Administratrix' action to recover damages for the wrongful death of her intestate.

On Saturday, March 31, 1962, between midnight and 2:45 a.m., a 1962 Corvair, occupied by plaintiff's intestate (Wilkerson) and by defendant Lewis Thomas Clark (Clark) and operated on what is now U. S. Highway No. 1 about five miles south of Raleigh, ran off the road and wrecked, thereby causing the death of Wilkerson.

Plaintiff alleged the negligent operation of the Corvair *by Clark* proximately caused the wreck and Wilkerson's death. Defendants denied all allegations as to their negligence and alleged that Wilkerson, not Clark, was operating the Corvair when the wreck occurred. Conditionally, defendants pleaded Wilkerson's contributory negligence as a bar to recovery herein.

It was stipulated that the actionable negligence of Clark, if any, is imputable to defendant David Judson Clark.

Evidence was offered by plaintiff and by defendants.

Issues as to negligence and damages were submitted. The jury answered the negligence issue, "No," and judgment that plaintiff recover nothing of defendants was entered. Plaintiff excepted and appealed.

*Smith, Leach, Anderson & Dorsett for plaintiff appellant.*

*Teague, Johnson & Patterson and Robert M. Clay for defendant appellees.*

BOBBITT, J. Clark, 34 or 35, and Wilkerson, 29, were frequent associates and close friends. Clark was the manager of Clark Chevrolet Company of Apex, N. C., a business owned solely by his father, defendant David Judson Clark. On occasions, Wilkerson did part time work for Clark Chevrolet Company.

Clark Chevrolet Company sold Corvairs. The Corvair involved in the wreck on March 31, 1962 "was a brand new Corvair demonstrator."

On March 31, 1962, the "Beltline," now U. S. 1, was under construction. It had not been "opened for traffic." However, certain lanes thereof had been paved. It was not "opened for traffic" until September 19, 1962.

U. S. 1, a primary north-south highway, runs generally east-west in the area where the wreck occurred. However, the lanes for traffic from Raleigh toward Apex are referred to as lanes for southbound traffic and those for traffic toward Raleigh as lanes for northbound traffic.

U. S. 1, between where it overpasses Western Boulevard and where it underpasses the Cary-Macedonia Road, is a four-lane highway, the two 12-foot lanes for southbound traffic being separated by a median strip from the two lanes for northbound traffic. Southbound traffic, before reaching the Cary-Macedonia underpass, comes to an exit ramp which extends obliquely to the right from U. S. 1 and provides access to the Cary-Macedonia Road. An additional traffic lane is provided for approaching motorists who plan to leave U. S. 1 and enter said exit ramp. Where the highway lanes and the ramp converge, the total width of the pavement is 56 feet. The exit ramp itself is 20 feet wide at said point of convergence and 16 feet wide beyond that point.

The portions of highway referred to above had been paved. The shoulders, consisting of red clay, were under construction.

There was evidence tending to show the following facts: The Clark Corvair, although the "Beltline" had not been "opened for traffic," was proceeding thereon from Raleigh toward Apex. Approaching the Cary-Macedonia exit ramp, it did not travel in the additional lane providing access thereto but traveled in the right lane of said two 12-foot lanes for southbound traffic. It passed a short distance beyond the point of entry to the exit ramp, cut to its right across the "V" dirt median between said lane and said ramp, crossed the ramp and the dirt shoulder thereof, went down the shoulder embankment into a 40-foot deep ravine and finally stopped some sixty feet beyond said embankment. The wrecked Corvair, with Wilkerson's body and Clark *therein,* was discovered prior to 2:45 a.m.

There was sufficient admitted evidence to support a finding that Clark was the driver and that his actionable negligence proximately caused the wreck and Wilkerson's death. A review of this evidence is unnecessary to decision on this appeal. The court properly overruled defendants' motion(s) for judgment of nonsuit.

There was evidence tending to show the "Beltline," then under construction, underpassed the Jones-Franklin Road; and that the Jones-Franklin Road is "almost parallel" with the Cary-Macedonia Road and is "about a half mile towards Raleigh from the Cary-Macedonia Road."

Freeman, plaintiff's witness, testified in substance, except when quoted, as follows: On Friday night, March 30, 1962, he was visiting on Dillard Drive. He left "around 12:00, five minutes after or something like that," to go to Mebane where he then lived. Traveling along the Jones-Franklin Road, he stopped his car on the bridge over the "Beltline" to determine whether the "Beltline" was then open for traffic. While stopped there, he saw only one car. This car approached on the "Beltline" from his right (from the direction of Raleigh) and traveled to his left after passing under the Jones-Franklin bridge. He saw this car as it traveled three-tenths of a mile approaching the underpass and as it traveled three-tenths of a mile beyond the underpass. When he last saw it, this car was headed toward and lacked "approximately two-tenths of a mile" of reaching "the Cary-Macedonia exit." He saw only the headlights, taillights and top of this car. He is familiar with Corvair cars and could and did identify this car as a Corvair. During the time he saw it, this Corvair, in his opinion, "was traveling in excess of 80 miles an hour."

Freeman testified he told Cecil Wilkerson, brother of plaintiff's intestate, substantially what he had testified at the trial, and Cecil Wilkerson so testified.

After plaintiff had offered his evidence and rested, the judge instructed the jury he had come to the conclusion that said testimony of Freeman and of Cecil Wilkerson had been improperly admitted in evidence, and that defendants' objections thereto should have been and were now sustained. Thereupon, the court instructed the jury "not to consider that testimony at all in the trial of this case," and to dismiss it from their minds completely "just as if it were never spoken in this court by anybody." Plaintiff excepted and assigns as error the exclusion of said testimony and the court's said instructions in relation thereto.

If Freeman saw the Clark Corvair, and if the wreck occurred after its uninterrupted travel from where it was when Freeman last saw it to the scene of the wreck, the testimony of Freeman is not inadmissible on account of remoteness or otherwise. Under the facts here, the distance between the point when last observed by Freeman and the scene of the wreck would bear on the weight rather than the competency of Freeman's testimony. *Honeycutt v. Strube,* 261 N.C. 59, 64, 134 S.E. 2d 110, and cases cited.

"Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." 31A. C.J.S., Evidence § 161.

Under our decisions, actionable negligence may be established by circumstantial evidence; and where there is evidence of facts and circumstances from which it may be inferred that actionable negligence is the more reasonable probability, the issue is for jury determination. *Frazier v. Gas Company,* 247 N.C. 256, 100 S.E. 2d 501; *Drum v. Bisaner,* 252 N.C. 305, 113 S.E. 2d 560; *Patton v. Dail,* 252 N.C. 425, 114 S.E. 2d 87.

In *S. v. Johnson,* 199 N.C. 429, 154 S.E. 730, Stacy, C.J., referring to circumstantial evidence in criminal cases, said: "The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." Since *S. v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431, to which reference is made for a full discussion by Higgins, J., this Court has approved the quoted statement as the established rule in this jurisdiction.

The question here is whether there was evidence of facts and circumstances from which *it may be* inferred as the more reasonable probability (1) that Freeman saw the Clark Corvair *and* (2) that the wreck occurred after its uninterrupted travel from where it was when Freeman last saw it to the scene of the wreck. If so, it was for the jury to determine whether the evidence is sufficient to establish such facts

and circumstances *and* to warrant findings in plaintiff's favor as to both propositions. In this connection, see *Morgan v. Bell Bakeries, Inc.*, 246 N.C. 429, 98 S.E. 2d 464, where circumstantial evidence was held admissible and sufficient to support a finding that a particular bread truck was in fact the motor vehicle involved in the accident; also, see Annotation, "Proof, in absence of direct testimony, of identity of motor vehicle involved in accident." 81 A.L.R. 2d 861-888.

There was evidence tending to show the following facts: In the late afternoon of Friday, May 30, 1962, Clark asked Wilkerson to come by the place of business of Clark Chevrolet Company at or about 9:00 p.m., closing time, just to ride around with him. The car in which they were riding was "a brand new Corvair demonstrator." Clark and Wilkerson "left Raleigh about midnight," Clark driving. They traveled "out of Raleigh on the Western Boulevard and onto the new Beltline," headed back toward Apex. The paved roadway on which they traveled had not been "opened for traffic." At 2:45 a.m., when a Cary police officer arrived, Wilkerson was dead. His neck was broken and his body "felt clammy, cold, or cool." Clark was seriously injured. The Corvair was on its right side. Clark's back was against the top. His feet and legs extended over the legs of Wilkerson. Clark did not know what occurred after the wreck until he heard a car stop and voices of investigating officers.

In addition to the foregoing: When and by whom the wrecked Corvair was discovered does not appear. There is no evidence the "Beltline," then under construction and not "opened for traffic," had been or was being used by unauthorized persons other than Clark. Testimony as to tire marks, course of travel, damage to the Corvair and tragic consequences to the occupants, are consistent with Freeman's testimony as to speed.

Delay in the discovery of the wrecked Corvair, notwithstanding evidence the lights thereon were burning, is consistent with non-use of the "Beltline" by the traveling public. If Clark "left Raleigh about midnight," it may be reasonably inferred that he passed under the Jones-Franklin bridge approximately at the time referred to in Freeman's testimony; and, then headed for Apex, it would seem reasonable to infer it would be improbable he would be traveling the same course at a later hour.

Further discussion of the evidence is deemed inappropriate. In our view, the circumstantial evidence was sufficient *to permit* the jury to find that Freeman saw the Clark Corvair and that the wreck occurred after its uninterrupted travel from where it was when Freeman last saw it to the scene of the collision. If the jury should so find by the greater weight of the evidence, Freeman's testimony as to speed was

competent. Hence, Freeman's testimony should have been admitted and the jury should have been instructed as indicated with reference to the findings prerequisite to its consideration as evidence relating to the speed of the Clark Corvair.

Defendants contend the court's exclusion of Freeman's testimony and of said portion of Cecil Wilkerson's testimony, if error, was not prejudicial to plaintiff. They contend this evidence was first admitted and was before the jury "over a day" before excluded by the court's ruling. However, the court, in substance, instructed the jury there was no evidence Freeman saw the Clark Corvair. We must assume the jury acted in compliance with the court's ruling and positive direction. Thereafter, the evidence for jury consideration as to what occurred in respect of speed and other alleged negligence prior to and at the time of the wreck related solely to physical facts observed at the scene after the wreck occurred. Under the circumstances, we cannot say the erroneous ruling did not substantially prejudice plaintiff.

For the error indicated, a new trial is awarded. Discussion of other assignments of error, relating to matters which may not recur at the next trial, is deemed unnecessary.

New trial.