HOWARD McGRADY AND HELEN P. McGRADY v. QUALITY MOTORS OF ELKIN, INC., AND HOWARD GRATIS NORMAN

No. 7423SC688

(Filed 16 October 1974)

1. **Automobiles § 45; Evidence § 19— driving on wrong side of road — point 500 feet from collision — remoteness**

   In an action to recover for personal injuries and property damage sustained in a head-on collision with defendants' car-carrying tractor-trailer rig, the trial court did not err in the admission of testimony that at about 6:20 a.m. on the morning of the collision a witness met a tractor-trailer carrying cars which was being operated in the center of the road 500 feet from the point of the collision where the evidence showed the collision occurred about 6:30 a.m., since it may be inferred as the more reasonable probability (1) that the witness saw defendants' vehicle and (2) that the collision occurred after its uninterrupted travel from where the witness saw it to the point of the collision.

2. **Appeal and Error § 30— necessity for motion to strike**

   Where there is no objection to the admission of testimony, a motion to strike is addressed to the discretion of the trial court.

3. **Evidence § 50— medical testimony — response to hypothetical question — use of "possible"**

   In an action to recover for personal injuries sustained in a motor vehicle accident, the trial court did not err in refusing to strike a physician's response to a hypothetical question that it is "possible" that blows to plaintiff's knees could have damaged the cartilage under her kneecaps and produced the symptoms which she now manifests.

APPEAL by defendants from *Collier, Judge,* 25 March 1974 Session of Superior Court held in ALLEGHANY County. Heard in the Court of Appeals on 4 September 1974.

This is a civil action wherein plaintiffs seek to recover from the defendants damages for injury to person and property

allegedly resulting from the negligence of the defendants in the operation of a motor vehicle on 21 January 1972.

The collision giving rise to this cause between the pickup truck operated by the plaintiff, Helen P. McGrady, and owned by her husband, Howard McGrady, and the tractor-trailer rig operated by the defendant, Howard Gratis Norman, and owned by the defendant, Quality Motors of Elkin, Inc., occurred approximately eight miles west of Sparta, North Carolina, on N. C. Highway 93, near the point where it intersects with Rural Paved Road 1334. The plaintiffs' vehicle was proceeding east and the defendants' vehicle was proceeding west on N. C. Highway 93 when they collided head-on near the intersection.

At the trial, both the plaintiffs' and the defendants' evidence tended to show that at the time of the collision the roads were wet and it was dark, foggy, and misty. Aside from this, the remaining evidence was conflicting as to exactly how the accident occurred. The plaintiffs' evidence tended to show that Mr. Norman was operating his vehicle partially in the wrong lane of traffic, whereas the defendants' evidence tended to show that the accident resulted from the McGrady truck skidding and sliding into the front of the defendants' truck as it rounded the sharp curve in the intersection.

The plaintiffs, over defendants' objection, introduced testimony of Herbert C. Jones that at about 6:20 a.m. on the morning of the accident he was driving his automobile east along N. C. Highway 93 at a point approximately 500 feet east of the intersection when he met a tractor-trailer rig (car carrying type) proceeding in a westerly direction in the center of N. C. Highway 93 and that he was crowded off the highway by the tractor-trailer.

Issues of negligence, contributory negligence, and damages were submitted to and answered by the jury in favor of the plaintiffs. From a judgment on the verdict that Mrs. McGrady recover $2,150.00 for her personal injuries and that Mr. McGrady recover $2,100.00 for the damage to his pickup truck, the defendants appealed.

*Edmund I. Adams for plaintiff appellees.*

*Franklin Smith for defendant appellants.*

HEDRICK, Judge.

[1]   By assignments of error 1 and 3, defendants contend the court erred in admitting the testimony of the witness Jones and in instructing the jury that the plaintiffs offered evidence tending to show that the witness Jones saw a tractor-trailer rig (car carrying type) being operated in the center of the road five hundred feet from the point of the collision.

If Jones saw the defendants' tractor-trailer rig and if the accident occurred after its uninterrupted travel from where it was when Jones last saw it to the scene of the collision in question, the testimony of Jones would not be inadmissible on account of remoteness or otherwise. Under the facts here, the distance between the point when last observed by Jones and the scene of the collision would bear on the weight rather than the competency of Jones' testimony. *Wilkerson v. Clark*, 264 N.C. 439, 141 S.E. 2d 884 (1965); *Honeycutt v. Strube*, 261 N.C. 59, 134 S.E. 2d 110 (1964).

"Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." 31A C.J.S., *Evidence,* § 161, p. 440 (footnotes omitted).

The question here, as in *Wilkerson v. Clark, supra,* is whether there was evidence of facts and circumstances from which it may be inferred as the more reasonable probability (1) that Jones saw the defendants' vehicle and (2) that the collision occurred after its uninterrupted travel from where it was when Jones last saw it to the scene of the collision. "If so, it was for the jury to determine whether the evidence is sufficient to establish such facts and circumstances *and* to warrant findings in plaintiff's favor as to both propositions." *Wilkerson v. Clark, supra* at 442-443, 141 S.E. 2d at 887.

There is nothing in the record to establish precisely the time of the collision. The evidence in the record tends to show that the accident in question occurred at *about* 6:30 a.m. The defendant Norman was operating a tractor-trailer rig loaded with five automobiles. Jones testified that he saw a "tractor pulling an automobile trailer in which to carry automobiles on" on N. C. Highway 93 approximately 500 feet from the point of the collision at *about* 6:20 a.m. Jones testified that the vehicle he saw was being operated in the middle of the highway. Jones

neither saw nor heard the collision nor did he learn of it until several hours later.

Our view is that the evidence of the facts and circumstances is sufficient to raise an inference that Jones saw the defendants' truck and that its travel was uninterrupted from where he last saw it to the point of the collision. Therefore, his testimony with respect thereto was admissible. Consequently, the court did not err in instructing the jury as it did with respect to such testimony.

[2] Assignments of error 2, 8 and 9 relate to the trial court's refusal to strike the testimony of Dr. Ashley and in recapitulating his testimony in the instructions to the jury. From the record, it appears that the motion to strike the testimony of Dr. Ashley was made at the same time as was the defendants' motion for a directed verdict. No objection was made to Dr. Ashley's testimony, which covers approximately three pages in the record. A motion to strike must be made immediately after the testimony objected to is given in order to preserve an exception to the admission of the evidence and, where there is no objection to the testimony, a motion to strike is addressed to the discretion of the trial court and its ruling thereon is not subject to review in the absence of abuse. 1 Strong, N. C. Index 2d, Appeal and Error, § 30, p. 165. Thus, it was not error for the court to deny the motion to strike this testimony nor was it error for the court to recapitulate his testimony in the instructions to the jury.

[3] Assignments of error 6, 7, 8 and 9 relate to the trial court's refusal to strike the testimony of Dr. Adams and in recapitulating his testimony in the instructions to the jury.

Dr. Richard W. Adams, a specialist in orthopedic surgery, testified that Dr. Ashley referred Mrs. McGrady to him and that he saw her on 9 August 1973. She gave him a history of having bruised her knees in an automobile accident on 21 January 1972. Mrs. McGrady told Dr. Adams that she "had trouble sitting and squatting and placing stress on the knees." Upon examination, Dr. Adams found that the patient had a "crepitation or a grinding sensation when the kneecap was pressed against the joint . . . there was a grinding sensation and there was pain." He diagnosed her condition as "chrondromalacia of the patella. This means had cartilage of the kneecap. In other words, the cartilage on the under surface of the kneecap had

been damaged and had undergone degenerative changes. This is the reason for the grinding sensation that she has, the cartilage had roughened and that is the reason she had the discomfort in her knees."

After stating that he had an opinion, Dr. Adams was allowed to testify in considerable detail as to how long the condition he described with respect to the patient's knees would persist. In substance, it was his opinion that the condition with pain might persist for years, but that he could not say with any degree of certainty as to how long.

After giving the foregoing testimony, Dr. Adams was permitted over defendants' objection to answer the following hypothetical question:

"If the jury should find from the evidence and by its greater weight that Mrs. McGrady was driving a pickup truck which was involved in a head-on collision on the 21st day of January, 1972, that she received an injury to both knees by striking them on the dashboard or some other part of the inside of her truck, that she had never prior to that time had any injury or trouble with her knees, that a few weeks later she began to have pain in her knees and that she continued to experience pain in her knees until you examined her on August 9, 1973, do you have a professional medical opinion based on your expert medical knowledge and experience as to whether or not the chrondromalacia condition you found could or might have resulted from the injury to her knees she received in that head-on collision?"

After stating that he did have an opinion, he responded:

"It is certainly possible that the blows to her knees could have damaged the cartilage on the under surface of the kneecap and this could have led then to deterioration of the cartilage, producing the symptoms which she now manifests."

Defendant contends the court erred in denying their motion to strike Dr. Adams' response to the hypothetical question. Our concern with respect to the court's refusal to strike Dr. Adams' response to the hypothetical question is whether Dr. Adams' opinion was based on mere speculation or conjecture rather than on reasonable scientific probabilities.

"Expert opinion testimony may be given in terms of an opinion that something might, could, or would produce

a certain result. Opinion testimony of this nature is said to be admitted into evidence on the theory that an expert witness' view as to probabilities is often helpful in the determination of questions involving matters of science or technical or skilled knowledge. * * *

An expert witness should not be barred from expressing his opinion merely because he is not willing to state his conclusion with absolute certainty. But an expert's opinion, if not stated in terms of the certain, must at least be stated in terms of the probable, and not merely of the possible. * * *

The expert is entitled to give his best judgment or opinion on the matter under inquiry, but not to give answers which are mere guesses or to give an opinion which is nothing more than naked or baseless conjecture. While an expert may testify to general scientific facts or doctrines which are pertinent to elucidate the facts in issue, he cannot testify either as to general theories which have only a remote and conjectural application to the facts of the case, or as to general conditions or occurrences speculatively connected with the issues at bar. Under particular circumstances, however, in the discretion of the trial court, more or less conjectural opinions have been admitted, especially in cases calling for expert medical testimony." 31 Am. Jur. 2d, *Expert and Opinion Evidence,* § 44, pp. 548-549 (footnotes omitted).

When Dr. Adams' response to the hypothetical question is considered in the light of all his testimony, it is clear that his opinion was based on reasonable probabilities and not mere conjecture. In our opinion, his use of the word "possible" does not render his testimony inadmissible. Under the circumstances of this case, we find no abuse of discretion or prejudicial error upon Judge Collier's refusal to strike Dr. Adams' response to the hypothetical question. Nor is there any merit in defendant's contention that the court erred in recapitulating to the jury what Dr. Adams' testimony tended to show. These assignments of error are overruled.

In the trial in the superior court, we find

No error.

Judges BRITT and BALEY concur.