**PEELER v. PIEDMONT ELASTIC, INC.**

[132 N.C. App. 713 (1999)]

CAROLYN MILLER PEELER, Employee, Plaintiff v. PIEDMONT ELASTIC, INC., Employer; COMPCAROLINA (Formerly "PCA Solutions" and "Consolidated Administrators"), Carrier, Defendants

No. 98-672

(Filed 6 April 1999)

**1. Workers' Compensation— compensable condition— pulmonary condition related to back surgery—evidence sufficient**

There was competent evidence in a workers' compensation action in letters from plaintiff's doctors to support the finding that her pulmonary condition was related to a back injury which she sustained while working for defendant. Although defendants point to evidence within each doctor's testimony that supports the position that the pneumonia was unrelated to the surgery, the Commission need not make specific findings rejecting portions of a statement by a witness.

**2. Workers' Compensation— continuing compensable condition—evidence insufficient**

A workers' compensation award requiring defendants to pay for treatment of a pulmonary problem after back surgery arising from employment was reversed where causation was not supported by the testimony cited by the Commission.

**3. Workers' Compensation— attorney fees—improperly awarded**

The Industrial Commission improperly penalized defendants under N.C.G.S. § 97-88.1 by awarding attorney fees for failure to comply with an order directing payment for pneumonia treatment without a determination that a hearing was brought, prosecuted, or defended without reasonable ground.

Appeal by defendants from opinion and award filed 27 January 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 27 January 1999.

*Randy D. Duncan, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by William J. Garrity, for defendant-appellants.*

**PEELER v. PIEDMONT ELASTIC, INC.**

[132 N.C. App. 713 (1999)]

LEWIS, Judge.

On 4 January 1995, plaintiff sustained an injury by accident to her back while working for defendant Piedmont Elastic, Inc. Plaintiff underwent two back surgeries for this compensable injury, the first on 13 June 1995 and the second on 15 February 1996. On 13 July 1995, approximately one month after the first surgery, plaintiff was hospitalized for pneumonia. At issue in this case is the extent of pulmonary treatments for which defendants must pay as a result of the pulmonary problems plaintiff has experienced since her first surgery.

Plaintiff has been a heavy smoker for many years and has had numerous bouts with bronchitis; her first surgery was postponed for two weeks to allow her to recover from one such illness. Her family physician, Dr. Rudisill, treated plaintiff both before and after her first surgery for various ailments, including continued back pain and more pulmonary problems. Plaintiff saw Dr. Rudisill on 4 July 1995, and he diagnosed her as having asthmatic bronchitis and sinusitis. Shortly thereafter, plaintiff's surgeon, Dr. McCloskey, requested that a pulmonologist, Dr. Owens, see plaintiff. On 13 July 1995, plaintiff was admitted to Frye Regional Medical Center by Dr. Owens for treatment for pneumonia. Plaintiff remained in the hospital until 17 July 1995 when she was discharged by Dr. Pollock, an associate of Dr. Owens and also a pulmonologist. Plaintiff has continued to experience breathing difficulty and bouts of bronchitis.

Plaintiff filed a Form 33 requesting a hearing regarding payment for the pneumonia medications on 28 July 1995. In August of 1995, Drs. McCloskey and Pollack each tendered letters to plaintiff's attorney indicating that plaintiff's pneumonia was a result of the anesthesia involved in her first back surgery. On 22 August, defendants filed a Form 33R contending that the pneumonia treatments were unrelated to the original compensable injury. By letter dated 24 August 1995, the Industrial Commission ordered defendants to pay for the pneumonia treatment; defendants' motion for reconsideration of this order was denied on 19 September 1995.

At a hearing before the deputy commissioner on 27 June 1996, plaintiff and her husband testified, and depositions of Drs. Rudisill, Pollock, Owens, and McCloskey were received as evidence. The deputy commissioner ordered that "[d]efendants shall provide and pay for all treatment of the employee's pulmonary problems after the June 13, 1995, surgery, including treatment by Dr. Rudisill, Dr.

**PEELER v. PIEDMONT ELASTIC, INC.**

[132 N.C. App. 713 (1999)]

Pollock, [and] Dr. Owens." Defendants were ordered to pay $700.00 in attorney's fees as well as costs due the Commission for their failure to comply with the Commission's order of 24 August 1995.

Defendants' appeal was heard by the Full Commission on 18 August 1997. The Full Commission affirmed the award of the deputy commissioner, and found the following facts which are the subject of this appeal:

4. Dr. Elbert Rudisill, a Hickory family practitioner, has been the employee's family doctor since before 1981. Before the employee's June 3, 1995, back surgery, the employee did not have any chronic pulmonary problems. Since the June 13, 1995, back surgery, the employee has had recurrent pulmonary infections which are still ongoing.

5. Dr. Rudisill saw the employee: 7/4/95, 8/26/95, 9/18/95, 9/21/95, 10/10/95, 1/4/96, 1/16/96, 2/1/96, 4/2/96, 6/3/97 [sic], 6/25/96, 6/28/96, 7/9/96, 7/13/96, and 7/30/96. That was more times than any of the other treating physicians. Dr. Rudisill became concerned that while the Hickory pulmonologist [sic] were telling the employee she was cured that [sic] he could readily detect ongoing pulmonary problems.

6. Dr. Rudisill is reasonably certain that the employee's June 13, 1995, back surgery caused an ongoing recurrent pulmonary infectious process.

7. Dr. Scott McCloskey, the employee's neurosurgeon, Dr. Joseph Pollock and Dr. Fred Owens believe at least the pneumonia, bronchitis and sinusitis after the June 1995 back surgery were in part caused or aggravated by the surgery. Anesthesia during surgery is a well-known risk factor in the development or aggravation of pulmonary problems. In the employee's situation, her June 13, 1995 surgery had been postponed because of that risk.

8. While some of the doctors felt the employee's pulmonary problems caused by the June 13, 1995, surgery had ended after the employee's July 13, 1995-July 17, 1995, Frye Regional Medical Center hospitalization for pulmonary complications, the undersigned believes Dr. Rudisill is correct, and that surgery-caused pulmonary problems have continued.

9. The employee properly applied to the Commission for approval of the pulmonary expenses. By letter/order dated

August 24, 1995, the Industrial Commission ordered Defendants to cover the pneumonia treatment. Defendants did not appeal from that order and have continuously refused to comply.

Based on these findings of fact, the Full Commission made the following conclusions of law:

1. One of the causes of the employee's continuing pulmonary problems of pneumonia, bronchitis and sinusitis was her June 13, 1995, back surgery for the injury at work and the Defendants shall provide treatment. G.S. §97-25.

2. The Defendants have continuously refused to comply with the Commission's August 24, 1995, order to provide treatment without filing an appeal and they shall be sanctioned pursuant to G.S. §97-88.1.

The Defendants were ordered to pay for "all treatment of the employee's pulmonary problems after the June 13, 1995, surgery," and to pay $700.00 directly to plaintiff's attorney as a reasonable attorney fee.

Defendants appeal and argue four assignments of error. In our review of an Industrial Commission opinion and award, we determine whether the findings of fact are supported by any competent evidence and whether the findings of fact so supported justify the conclusions of law drawn therefrom. *See Snead v. Carolina Pre-Cast Concrete, Inc.*, 129 N.C. App. 331, 334, 499 S.E.2d 470, 472, *cert. denied*, 348 N.C. 501, 510 S.E.2d 656 (1998). "The Commission's conclusions of law, however, are reviewable *de novo*." *Id.* at 335, 499 S.E.2d at 472. The findings of fact of the Full Commission are binding if supported by any competent evidence. *See Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). In this case, we are mindful that "implicit in the authority accorded the Commission to order additional compensation under G.S. § 97-47 and further medical treatment under G.S. § 97-25 is the requirement that the supplemental compensation and future treatment be directly related to the original compensable injury." *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286 (emphasis omitted), *disc. rev. denied*, 343 N.C. 513, 472 S.E.2d 18 (1996). *See also Errante v. Cumberland County Solid Waste Mgmt.*, 106 N.C. App. 114, 121, 415 S.E.2d 583, 587 (1992) (holding that " 'reasonable and necessary' worker's compensation awards for continuing medical expenses pursuant to Sections 97-29 and 97-25

**PEELER v. PIEDMONT ELASTIC, INC.**

[132 N.C. App. 713 (1999)]

contemplate only those reasonable and necessary expenses that are related to the *compensable* injury or injuries").

**[1]** Defendants first contend that there was no competent evidence to support the finding of fact that plaintiff's pulmonary condition was related to her first back surgery. We disagree. Dr. McCloskey's letter of 7 August 1995 is in the record and states his opinion that "the sinusitis and subsequent pneumonia (developing so close to the immediate postoperative period) was a condition caused or at least aggravated by the general anesthesia the patient had for the operation." Additionally, Dr. Owens' letter of 14 August 1995 says the plaintiff "developed purulent bronchitis and pneumonia which were directly attributable to her operative procedure." These statements are competent evidence, and they are further supported by deposition testimony from these doctors and Dr. Pollack indicating the causal connection between the first surgery and the pneumonia of 13 July 1995. Although defendants point to evidence within each doctor's testimony that supports their position that the pneumonia was unrelated to the surgery, the Commission need not make specific findings rejecting portions of a statement by a witness. *See Bryant v. Weyerhaeuser Co.*, 130 N.C. App. 135, 139, 502 S.E.2d 58, 62 (1998). This assignment of error is overruled.

**[2]** Second, defendants contend that the Commission erred in finding that the plaintiff's pulmonary conditions stemming from the surgery have continued. We have reviewed the record exhaustively, and we agree.

In its finding of fact number six, the Commission stated that "Dr. Rudisill is reasonably certain that the employee's June 13, 1995, back surgery caused an ongoing pulmonary infectious process." Dr. Rudisill stated that the plaintiff's pulmonary problems are ongoing, and he said that since the first surgery she has "had her share of pulmonary infections." He also admitted that pulmonary problems may arise after surgery. However, Dr. Rudisill never expressed anywhere in the record that he was "reasonably certain" the surgery caused plaintiff's ongoing pulmonary problems. He never even testified such a connection is *probable*. For example, Dr. Rudisill testified at his deposition:

Q. And you see the asthma as a condition that could have resulted from or been aggravated by the surgery, back surgery?

MR. GARRITY: Objection to the form.

A. The way you asked the question, that's a yes. It's *possible* it could have been aggravated by the surgery.

. . . .

Q. Well, let me ask it a different way: Do you see a relationship between the complication of surgery and these ongoing pulmonary problems that she has been experiencing?

MR. GARRITY: Objection to the form.

A. I see that, since her surgery, she has had a tremendous increase in pulmonary problems associated with infection and asthma.

Q. And could that be related to the surgery or surgery complications?

A. It's *possible* that could be related to that.

. . . .

Q. And do I understand you correctly that the extent to which you are able to draw some causal connection between some post-surgical complication and her current respiratory condition or the condition for which you treated her is *only* to the extent of a *possible* relationship?

A. *Correct*.

(Emphasis added).

Drs. Owens and McCloskey testified that the surgery caused the plaintiff's pneumonia of July 1995. Dr. Rudisill testified that the plaintiff continues to suffer from pulmonary problems. The Commission bridged the gap between these two statements in a manner not supported by the evidence. The Commission found in fact number eight that it "believe[d] Dr. Rudisill is correct, and that surgery-caused pulmonary problems have continued." Dr. Rudisill said plaintiff's pulmonary problems were ongoing, but he was never more positive than "possible" that the continuing problems were caused by the surgery. Apparently, the Commission relied in part on the conclusion of the pulmonologists—that the surgery caused the July 1995 pneumonia—and in part on Dr. Rudisill's conclusion—that the plaintiff has ongoing lung problems. The crucial link between these two statements for workers compensation purposes—causation—is nowhere supported by the testimony the Commission cites. Causation must be shown by

evidence that " 'indicate[s] a reasonable scientific *probability* that the stated cause produced the stated result.' " *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, 542, 463 S.E.2d 259, 262 (1995) (emphasis added) (quoting *Hinson v. Nat'l Starch & Chem. Corp.*, 99 N.C. App. 198, 202, 392 S.E.2d 657, 659 (1990) (citations omitted)), *aff'd per curiam*, 343 N.C. 302, 469 S.E.2d 552 (1996). Because Dr. Rudisill nowhere states to a reasonable scientific probability, or any probability at all, that "*surgery-caused* pulmonary problems have continued," this finding of fact is not supported by competent evidence.

Because findings of fact six and eight are unsupported by any competent evidence, the Commission's conclusion of law that "[o]ne of the causes of the employee's continuing pulmonary problems . . . was her June 13, 1995, back surgery" fails. Defendants are obligated to pay only for treatments "required to effect a cure or give relief" for conditions related to the compensable injury. N.C. Gen. Stat. § 97-2 (Supp. 1999). *See Pittman*, 122 N.C. App. at 130, 468 S.E.2d at 286. The award requiring defendants to pay for "all treatment of employee's pulmonary problems after the June 13, 1995, surgery," is reversed.

[3] Finally, defendants contend that the Full Commission erred in finding that attorney fees should be assessed for defendants' failure to comply with the 24 August 1995 order. The Commission awarded attorney fees pursuant to N.C. Gen. Stat. section 97-88.1 (1991), which provides for such an assessment if the Commission "determine[s] that any hearing has been brought, prosecuted, or defended without reasonable ground."

The Commission found the following fact:

9. The employee properly applied to the Commission for approval of the pulmonary expenses. By letter/order dated August 24, 1995, the Industrial Commission ordered Defendants to cover the pneumonia treatment. Defendants did not appeal from that order and have continuously refused to comply.

There is no determination by the Industrial Commission, as required by G.S. 97-88.1, that a hearing was "brought, prosecuted or defended without reasonable ground." *Id.* Therefore, the Commission improperly penalized defendants under G.S. 97-88.1. The order for attorney fees is reversed.

The portion of the award ordering payment for plaintiff's July 1995 pneumonia treatment is affirmed. All other parts are reversed.

We remand to the Industrial Commission for the purpose of entering an order stating the amount to be paid for plaintiff's July 1995 pneumonia treatment.

Affirmed in part, reversed in part, and remanded.

Judges WALKER and TIMMONS-GOODSON concur.