BETTY L. JOHNSON, PLAINTIFF v. PIGGLY WIGGLY OF PINETOPS, INC., DEFENDANT

No. COA02-263

(Filed 4 February 2003)

**1. Evidence— medical testimony—reasonable medical probability not required**

The trial court did not err in a negligence action by admitting medical testimony that it was "possible" that plaintiff's shingles were caused by an incident in defendant's store where the testimony was not baseless speculation. Testimony is admissible as long as it is helpful to the jury and is based on information reasonably relied upon under Rule 703; medical testimony is no longer inadmissible for failure to state that it is based on "reasonable medical probability."

**2. Negligence— causation—shingles outbreak**

There was sufficient evidence of causation in a negligence action in the admission of a doctor's testimony that an incident in defendant's store was "possibly" the cause of plaintiff's shingles outbreak, in the doctor's explanation of why the medical community believes shingles occur, and in other evidence.

Appeal by defendant from judgment entered 28 August 2001 and order entered 28 August 2001 by Judge Clifton W. Everett, Jr., in Edgecombe County Superior Court. Heard in the Court of Appeals 31 October 2002.

*King & King, L.L.P., by Charlene Boykin King, for plaintiff appellee.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Patrick M. Meacham, for defendant appellant.*

McCULLOUGH, Judge.

On the afternoon of 22 September 1997, plaintiff Betty L. Johnson, her daughter and granddaughter were shopping at the store of defendant Piggly Wiggly of Pine Tops, Inc. Unbeknownst to them, a physical confrontation was taking place inside the store, involving employees of defendant as well as others. Plaintiff moved toward the exit of the store as the group moved to the front of the store. The confrontation was broken up momentarily as some of the participants

left the premises. However, an employee of defendant broke away from those restraining her and proceeded to give chase. As she did, she ran into plaintiff from behind as plaintiff was attempting to exit the store. As a result, plaintiff's arms were thrust forward and her head was jerked backwards.

Plaintiff filed a complaint alleging negligence on the part of defendant on 19 January 1999. Plaintiff alleged her injuries as ongoing pain and soreness, palsy and loss of sensation in the face, difficulty hearing, memory loss, an outbreak of painful shingles, and emotional distress stemming from the incident and subsequent injuries. Defendant filed its answer on 19 March 1999 denying any negligence on its part.

The trial took place during the 29 May 2001 Civil Session of Edgecombe County Superior Court before the Honorable Clifton W. Everett. On 31 May 2001, the jury found that plaintiff was in fact injured by negligence of defendant, and awarded her "medical expenses plus $6,000.00 pain and suffering for a total of $8,225.04."

After trial, plaintiff made a motion for attorney's fees pursuant to N.C. Gen. Stat. § 6-21.1 in open court. After a hearing on 2 July 2001, Judge Everett entered the judgment from the trial in the amount of $8,225.04, and an order granting plaintiff's motion in the amount of $8,000.00. Defendant appeals.

Defendant makes the following arguments on appeal: The trial court erred by (1) admitting the testimony of Dr. R. Brookes Peters with regard to damages resulting from shingles and the causation of said conditions, as it was mere conjecture, surmise and speculation as to causation and thus insufficient evidence as to causation, admitting such testimony was an abuse of discretion; and (2) allowing plaintiff's motion for attorneys' fees as they were excessive and not based upon sufficient findings of fact.

I.

[1] The main thrust of defendant's appeal deals with the admission of testimony from plaintiff's expert, Dr. R. Brookes Peters.

Plaintiff testified that she was experiencing severe headaches in addition to ongoing pain in her neck, shoulder and back in the days after the incident on defendant's premises. As a result, on 24 September 1997, she visited Dr. Peters, her regular physician since 1986. She returned to Dr. Peters on 29 September 1997 as the pain

continued. At this time, Dr. Peters noticed a rash developing on plaintiff's neck, face and head. He diagnosed the rash as *herpes zoster*, or shingles. Plaintiff's shingles were "all but cleared" on 30 October 1997, and resolved by 12 December 1997.

Dr. Peters was tendered as an expert witness in the general practice of medicine and testified at trial via his videotaped deposition. After speaking of his treatment of plaintiff, Dr. Peters described shingles as being "a very interesting complication of chicken pox," as the chicken pox virus lies dormant in the body's nerve roots. Shingles result when this dormant virus flares up, causing a blistering type rash. As to the causes of these flare-ups, Dr. Peters answered: "It's poorly understood why shingles appear when they appear, but one prevailing thought is that shingles tend to occur at times of stress."

Defendant's appeal centers upon Dr. Peters' testimony as to the relationship between the 22 September 1997 incident, and the shingles that flared up shortly after. Dr. Peters made several comments throughout his testimony as to causation, for instance:

> [Plaintiff's Attorney]: Now, did you explain to her any relationship between physical and emotional stress and shingles at this time?

> [Dr. Peters]: My statement in the chart was, I listed the diagnoses, which were mild Bell's palsy, resolving shingles. I also mentioned a pharyngitis, which was the sore throat that she talked about. Now, my fourth diagnosis was history of recent trauma. *My statement was, I'm really not sure if these phenomena can all be interrelated. I have explained that physical and emotional stress can certainly be thought to be a trigger for shingles.*

> [Plaintiff's Attorney]: Did you have an opinion at that time whether the stresses suffered by Ms. Johnson could have caused or triggered her shingles at that time?

> [Dr. Peters]: I—I just read the way I stated it verbatim. And I think that it really is more of an observation than a conclusion.

(Emphasis added.) Further,

> [Plaintiff's Attorney]: Okay. Do you have an opinion based on a reasonable degree of medical certainty as to whether Ms. Johnson's injuries were caused by the incident which occurred on September 22nd, 1997, at the Piggly Wiggly.

**JOHNSON v. PIGGLY WIGGLY OF PINETOPS, INC.**

[156 N.C. App. 42 (2003)]

[Dr. Peters]: I think it's reasonable that the soft tissue injury described previously . . . the pain and the tenderness, were likely caused or could have been caused by that altercation.

. . . .

[Plaintiff's Attorney]: Okay. Do you have an opinion based on a reasonable degree of medical certainty whether the injuries related to Ms. Johnson's shingles were caused by the incident which happened on September 22nd of 1997 at the Piggly Wiggly?

[Dr. Peters]: *As I stated before, the thinking is that shingles may be related to stress; physical or emotional stress. And to the extent that the incident at the grocery store triggered physical and emotional stress, one could argue that they could be related. Whether or not it's true is hard—hard to say. But it certainly is feasible. It's possible.*

[Plaintiff's Attorney]: Okay, and what is your opinion?

[Dr. Peters]: *Just that: I think it's possible.*

[Plaintiff's Attorney]: And that is possible based on a reasonable degree of medical certainty in your opinion?

[Dr. Peters]: Right.

(Emphasis added.) On cross-examination by defendant, more was said on the subject of causation:

[Defendant's Attorney]: Okay. And then I believe at some point later you provided a follow-up note on May 11, 1998—

[Dr. Peters]: Yes.

[Defendant's Attorney]: —which indicated that that record should read that the shingles were not related to her injury at the grocery store, unless it was the stress of that injury that precipitated an outbreak of shingles?

[Dr. Peters]: Right.

[Defendant's Attorney]: Is that correct?

[Dr. Peters]: Yes.

[Defendant's Attorney]: So, [Plaintiff's Attorney] asked you, towards the end of—of your discussion with her, whether or not you could say within a reasonable degree of medical certainty

that the shingles were caused by the Piggly Wiggly incident. And I believe your response was it's possible that they were; is that accurate?

[Dr. Peters]: Yes.

[Defendant's Attorney]: Okay, what I want to ask you, then, is, in your medical opinion, to a reasonable degree of medical certainty, can you say that these shingles were indeed caused by the incident at Piggly Wiggly on September 22nd, 1997? Not whether it was possible, but whether or not they were indeed caused by something that happened on that day.

[Dr. Peters]: *The best way I can state that is that it's possible. I cannot say that it was certain, only that it's possible.*

[Defendant's Attorney]: Okay. And my interpretation of what you're saying with that answer is that the answer to my question is no, you cannot say to a reasonable degree of medical certainty that they were indeed caused by incidents that day?

[Dr. Peters]: *I don't think that's accurate. And I'm going to hedge you on this, because I don't think that the question can be answered. I don't think I can say they definitely were caused or they definitely were not caused. It is possible that these—that the stress of the injury, whether it be physical or emotional stress, could have caused the shingles.*

[Defendant's Attorney]: Is it at least equally possible, then, that any of the events surrounding the incident at Piggly Wiggly were not the cause of the shingles?

[Dr. Peters]: *It is possible that the shingles occurred independent of that event.*

[Defendant's Attorney]: And it's that possibility . . . . It is equally as possible that it did not happen from the Piggly Wiggly incident as it is that it did occur from the Piggly Wiggly incident?

[Dr. Peters]: *I'm not even going to get into percentages, 50/50 or otherwise. I don't—I mean, I guess that's open to interpretation, and I'm not trying to avoid the question. I don't know that you're going to find any kind of textbook that would answer that percentage question. I think it is possible that it was and it's possible that it wasn't.*

(Emphasis added.) Later, on redirect examination:

[Plaintiff's Attorney]: Okay. Is there a difference between the term "a reasonable degree of medical certainty" and "an absolute certainty"?

. . . .

[Dr. Peters]: I think there is.

[Plaintiff's Attorney]: And you stated in response to my questions earlier, that in your opinion the stress that Ms. Johnson suffered as a result of the incident that occurred on September 22nd, 1997, in your opinion triggered the outbreak of shingles; is that correct?

. . . .

[Dr. Peters]: I believe I said that it could have.

Essentially, Dr. Peters' testimony amounts to this: It is possible that the incident of 22 September 1997, by causing physical and emotional stress to plaintiff, could have triggered the outbreak of shingles, based on a reasonable degree of medical certainty. Prior to the introduction of Dr. Peters' video testimony, defendant objected with regard to the causal relationship of the incident and condition. This objection was overruled.

Defendant contends this testimony clearly indicates a lack of certainty with regard to any causal relationship between defendant's negligence and plaintiff's injury and, thus, should not have been admitted into evidence and should not have been considered by the jury for damages. At no point was Dr. Peters able to say with any certainty that the shingles were caused by the assault. Defendant relies on case law that stands for the proposition that expert testimony which shows that it is a mere possibility or conjecture that a resulting condition occurred as a direct result of an accident (or some act) is insufficient to base causation and thus should be excluded. *See Lee v. Stevens*, 251 N.C. 429, 434, 111 S.E.2d 623, 627 (1959) (" 'We may say with certainty that evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict and should not be left to the jury.' "). *Id.* (quoting *Byrd v. Express Co.*, 139 N.C. 273, 275, 51 S.E. 851, 852 (1905) (quoting *State v. Vinson*, 63 N.C. 335, 338 (1869)); *see also Gillikin v. Burbage*, 263 N.C. 317, 324-25, 139 S.E.2d 753, 759-60 (1965); *Garland v. Shull*, 41 N.C. App. 143, 254 S.E.2d 221 (1979); *Hinson v. National Starch & Chemical Corp.*, 99

N.C. App. 198, 392 S.E.2d 657 (1990). As defendant's appeal is pointed to the admissibility as well as, inherently, the sufficiency of the testimony towards causation, we address both issues.

In *Cherry v. Harrell*, 84 N.C. App. 598, 353 S.E.2d 433, *disc. review denied*, 320 N.C. 167, 358 S.E.2d 49 (1987), this Court addressed the question of whether or not an expert's failure to state his opinion was "reasonably probable" made it properly excludable. The plaintiff in *Cherry* had an automobile accident and was diagnosed with a herniated disk in her back over a year later. The expert in *Cherry* testified that the injury and the accident suffered by plaintiff were "related" and that the accident "most likely" was the cause of the injury. *Id.* at 603, 353 S.E.2d at 436. The defendant in that case argued that the expert had not testified that it was "reasonably probable" that plaintiff's accident "could have" caused her ruptured disk, and thus it was inadmissible.

*Cherry* noted that case law which necessitated the "formulation that the expert testify it was 'reasonably probable' that an accident 'could have' or 'might have' caused plaintiff's injury" was handed down at the time when experts could not testify as to the ultimate issue in the case, and tended to confuse the question of admissibility with sufficiency. *Id.* at 603-04, 353 S.E.2d at 436-37 (discussing *Lockwood v. McCaskill*, 262 N.C. 663, 138 S.E.2d 541 (1964) and *Gillikin*, 263 N.C. at 324-25, 139 S.E.2d at 759-60). These requirements were no longer applicable. *See* N.C. Gen. Stat. § 8C-1, Rule 704 (2001) (expert testimony no longer objectionable because it embraced the ultimate issue to be decided by the trier of fact); *State v. Smith*, 315 N.C. 76, 99-101, 337 S.E.2d 833, 848-49 (1985) (rejecting "could" or "might" phraseology). As such, the *Cherry* Court stated that "[t]he touchtone issue governing the admissibility of . . . expert opinion is instead Rule 702: did [the expert's] testimony on causation assist the jury's understanding of the evidence or determination of a fact in issue?" *Cherry*, 84 N.C. App. at 604, 353 S.E.2d at 437.

*Cherry* held that the expert's testimony was helpful and of assistance to the jury. Importantly, it noted that just because the expert had stated that events other than the automobile accident could have produced the plaintiff's injury, such did not render his testimony of no assistance to the jury:

> [W]hile the existence of other possible causes of plaintiff's [injury] might reduce the weight accorded [the expert's] opinion,

we hold such other possibilities do not alone render his opinion inadmissible.

*Id.* at 605, 353 S.E.2d at 437.

Still, it remains that "baseless speculation can never 'assist' the jury under Rule 702." *Id.* at 605, 353 S.E.2d at 438. "Under Rule 705, opposing counsel can challenge the basis of the expert's opinion by request or through *voir dire* or cross-examination." *Id.* (The expert's testimony in *Cherry* was found to have been adequately based on patient treatment under Rule 703.)

Thus, after *Cherry*, as to the admissibility of expert testimony on causation, as long as the testimony is helpful to the jury and based sufficiently on information reasonably relied upon under Rule 703, the testimony is admissible. No longer is testimony inadmissible for its failure to state it was based on "reasonable medical probability." The degree in which an expert testifies as to causation, be it "probable" or "most likely" or words of similar import, goes to the weight of the testimony rather than to its admissibility.

Applying this principle to the present case, we believe that the testimony given by Dr. Peters was helpful to the jury. He testified that stress is believed to be a triggering cause of shingles and that it was "possible" that the incident of 22 September 1997 produced the stress that triggered the onset of shingles in plaintiff. We note that Dr. Peters' testimony was not baseless speculation because his diagnosis was based on his own personal diagnosis and treatment of plaintiff, and the prevailing knowledge on the causes of shingles. While this is not the most definite statement an expert can give, especially in light of his statement that it was "possible" other events could have independently caused the shingles, this goes to the weight to be accorded his testimony by the jury, and not its admissibility.

**[2]** In addition to the admissibility of the testimony of the expert on causation, we address whether there was sufficient evidence of causation.

"[I]n order to be sufficient to support a finding that a stated cause produced a stated result, evidence on causation 'must indicate a reasonable scientific probability that the stated cause produced the stated result.'" *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, 542, 463 S.E.2d 259, 262 (1995) (quoting *Hinson*, 99 N.C. App. at 202, 392 S.E.2d at 659), *aff'd*, 343 N.C. 302, 469 S.E.2d 552 (1996). Expert witness testimony regarding causation which is based on mere specula-

tion or possibility is incompetent. *Poole v. Copland, Inc.*, 125 N.C. App. 235, 241, 481 S.E.2d 88, 92 (1997), *rev'd on other grounds*, 348 N.C. 260, 498 S.E.2d 602 (1998). "However, 'could' or 'might' may be used when the expert witness lacks certainty. Whether 'could' or 'might' will be considered sufficient depends upon the general state of the evidence." *Id.* (citations omitted). Further, our case law reveals that in some instances, "use of the word 'possible' does not render [an expert's] testimony inadmissible[,]" as here too, the sufficiency depends upon consideration of all the testimony. *McGrady v. Quality Motors*, 23 N.C. App. 256, 261, 208 S.E.2d 911, 914, *cert. denied*, 286 N.C. 336, 211 S.E.2d 213 (1974), *cert. denied*, 286 N.C. 545, 212 S.E.2d 656 (1975).

In *Poole*, this Court recognized certain trends in these very factual determinations:

> Cases finding 'could' or 'might' expert testimony to be sufficient often share a common theme—additional evidence which tends to support the expert's testimony. *See, e.g., Mann v. Transportation Co. and Tillett v. Transportation Co.*, 283 N.C. 734, 198 S.E.2d 558 (1973) (expert's testimony that preexisting defect "could or might have" caused steering system to fail, along with testimony of driver and plaintiff that driver turned the wheel but bus would not turn, held sufficient to send case to the jury); *Lockwood v. McCaskill*, 262 N.C. 663, 138 S.E.2d 541 (1964) (expert psychiatric testimony that accident "may have had an influence" on plaintiff's condition not sufficient standing alone, but when combined with expert's testimony on cross-examination and testimony of other lay witnesses, enough for jury to infer plaintiff's amnesia resulted from the accident); *Kennedy v. Martin Marietta Chemicals*, 34 N.C. App. 177, 237 S.E.2d 542 (1977) (expert testimony that inhaling of gases could have triggered decedent's heart attack, combined with evidence of color of decedent's lungs and quick breathing by decedent, held competent to support Industrial Commission's finding that a sudden deprivation of oxygen accelerated or aggravated decedent's preexisting heart condition). Cases finding "could" or "might" expert testimony insufficient generally have additional evidence or testimony showing the expert's opinion to be a guess or mere speculation. *See, e.g., Maharias v. Storage Company*, 257 N.C. 767, 127 S.E.2d 548 (1962) (expert's testimony that a pile of rags could have caused a fire through spontaneous combustion held insufficient when expert also testified on cross-examination

that he did not know where the rags were before the fire and that the fire "could have happened from any one of a number of causes"); *Hinson v. National Starch & Chemical Corp.*, 99 N.C. App. 198, 392 S.E.2d 657 (1990) (expert's testimony that plaintiff's inhalation of a chemical could have caused her impairment held insufficient where expert also testified he could not relate plaintiff's impairment to any specific etiology and that he could not say yes or no whether plaintiff's decreased pulmonary function resulted from an inhaled chemical).

*Poole*, 125 N.C. App. at 241-42, 481 S.E.2d at 92-93. This list is not exhaustive. *See Lee*, 251 N.C. 429, 111 S.E.2d 623 (disallowing portions of jury verdict for cerebral hemorrhage where possible causes including weak blood vessels and hardened arteries, and where plaintiff's expert witness testified only as to the "possibility" that a car accident caused hemorrhage); *Peeler v. Piedmont Elastic, Inc.*, 132 N.C. App. 713, 718-19, 514 S.E.2d 108, 112 (1999) (reversing award of damages for employee's pulmonary condition as to post-surgical complications when medical testimony showed only that it was " 'possible' that the continuing problems were caused by the surgery"); *McGrady*, 23 N.C. App. at 261, 208 S.E.2d at 914 (allowing testimony that an accident possibly caused cartilage damage in plaintiff's knee, taken in conjunction with other testimony explaining the circumstances).

In *Lockwood*, the Supreme Court stated that:

If it is not reasonably probable, as a scientific fact, that a particular effect is capable of production by a given cause, and the witness so indicates, the evidence is not sufficient to establish *prima facie* the causal relation, and if the testimony is offered by the party having the burden of showing the causal relation, the testimony, upon objection, should not be admitted and, if admitted, should be stricken.

*Lockwood*, 262 N.C. at 669, 138 S.E.2d at 545-46. In that case, the expert witness was asked whether or not the automobile accident that had occurred was a "contributing factor to his [plaintiff's] attack of amnesia and depression." *Id.* at 665, 138 S.E.2d at 543. The expert's answer was that "[the accident] may have had an influence on his condition." *Id.* at 669, 138 S.E.2d 546. The Court stated that standing alone, the testimony "does not indicate a reasonable scientific probability that the attack of amnesia resulted from plaintiff's physical injuries." *Id.* However, after considering this testimony with the rest

of his testimony, that the amnesia was "induced by a deep sense of insecurity" and that plaintiff's nature was such that he was prone to such behavior, and the testimony of others, that plaintiff's nature was intensified by the repercussions of the accident, it was "permissible, but not compulsory, that the jury infer that the physical injuries suffered by plaintiff were the direct cause" of plaintiff's amnesia. *Id.* at 670, 138 S.E.2d at 547.

In the present case, Dr. Peters testified that it was possible that the stress produced by the incident on 22 September 1997 could have directly caused plaintiff's shingles. On the other hand, he testified that it was possible that an event independent of 22 September 1997 could have also caused the shingles. This alone, we believe, is insufficient to establish causation.

As in *Lockwood* and *Poole*, we look to the other testimony to see whether the record as a whole lends support to the expert's qualified opinion. Here the evidence shows that plaintiff had never experienced shingles before and the outbreak occurred just a few days after the incident at defendant's store. Plaintiff and her daughter testified as to how traumatic the event was and how upset it had made her at that time. Testimony by Dr. Peters revealed that on her visits to his office, plaintiff stated that she was "not emotionally over" the Piggly Wiggly incident and that she had a "generalized malaise" since that event. During cross-examination, plaintiff was asked about other events that occurred in her life near the time the 22 September 1997 incident took place that may have caused her stress. She testified that she did have stressful events that had occurred *after* the event on 22 September 1997. As to *before* 22 September 1997, she testified that while her house getting broken into was not stressful, her granddaughter being born with *spina bifida* and having five operations did cause her stress.

Despite the fact that the expert described the incident as "possibly" being the cause of the shingles outbreak, we believe that his opinion along with his explanation of why the medical community believes shingles occur and the other testimony leaves us in a similar position as the *Lockwood* and *Poole* cases, in that it was "permissible, but not compulsory, that the jury infer" that the incident of 22 September 1997 caused plaintiff physical injuries and emotional stress, which were the direct causes of plaintiff's shingles. This is so especially in light of the fact that the shingles manifested themselves so close in relation of time to the event.

Thus we hold that, under the facts of this case, it was not error to admit the expert's testimony on the causation of shingles, and the evidence in the case supports the verdict.

As there was no abuse of discretion, this assignment of error is overruled.

As to the award of attorneys' fees pursuant to N.C. Gen. Stat. § 6-21.1 (2001), given our determination that the testimony was admissible and the verdict sustained, this assignment of error is overruled.

No error.

Judges WALKER and CAMPBELL concurred in this opinion prior to 31 December 2002.